R. McCASKILL and others v. J. W. LANCASHIRE.

*Partnership Assets—Supplementary Proceedings—Equitable Interests.*

1. The equitable interest of a partnership under a contract to convey land to the firm may be subjected to the partnership debts by proper proceeding against the surviving partner.

2. The equity of a debtor to have a conveyance of realty from a third person can be reached by the creditors only by civil action, and not by proceedings supplementary to execution.

3. The heirs of deceased partners are not necessary parties to an action to subject the real property of the firm to the claims of its creditors.

(*Simmons* v. *Spruill*, 3 Jones Eq., 9 ; *Hoppock* v. *Shober*, 69 N. C.. 153 ; *McKeithan* v. *Walker*, 66 N. C., 95 ; *Hutchison* v. *Symons*, 67 N. C., 156 ; *Waugh* v. *Mitchell*, 1 Dev. & Bat. Eq., 510 ; *Rand* v. *Rand*, 78 N. C., 12, cited, commented on and approved.)

CIVIL ACTION tried at Fall Term, 1879, of CUMBERLAND Superior Court, before *Seymour, J.*

The defendant filed a demurrer to the complaint, which was sustained and the plaintiff appealed. The facts are embodied in the opinion of this court.

*Messrs. Hinsdale & Devereux*, for plaintiffs.
*Mr. B. Fuller*, for defendant.

DILLARD, J.   The plaintiffs being creditors of the debtor partners trading under the name and style of J. W. Lancashire & Co., in November, 1870, after the death of W. H. Morehead and Melvin Lowery, two of the firm, recovered two judgments against J. W. Lancashire as surviving partner, one in a justice's court for two hundred dollars and the other in the superior court for a large sum, both of which were docketed in the county in which the lands described in the complaint are situate.

The object of the action is to have a certain alleged equitable interest or estate of J. W. Lancashire & Co. in the lands described in the complaint, which cannot be sold under an ordinary execution, defined and adjudged by the court, and to have the same applied to plaintiffs' judgment as being assets of the late firm, and in order to understand the points presented for our determination, it will be material to make a concise statement of the facts :

In 1866, J. W. Lancashire & Co., all the members of the firm being then alive, contracted to purchase the lands from the defendant, A. G. Thornton, at the price of $3,500, on the terms that they were to pay $1,000 cash down, and give their note for $2,500 to cover the balance, and the said Thornton was to convey the land at once.

The purchasers performed the contract on their part by making the cash payment and giving their note for the deferred instalment, and the said Thornton attempted to perform his part of the contract by executing what he and his grantees took to be a deed sufficient in form and substance to pass the estate, but the same was in fact inoperative to pass the legal title for want of a seal to it.

J. W. Lancashire immediately went into possession of the land, and used the same as partnership property, and having the instrument executed to them, they had every confidence that their title was good.

While matters stood thus, the land was levied on under an execution in favor of Hinsdale as the property of A. G. Thornton, and sold by the sheriff and title made to the purchaser, who bought with notice of the equities of J. W. Lancashire & Co., and just before the sale, the said Thornton went into bankruptcy and surrendered the note for $2,500, which is now in the hands of his assignee, D. G. McRae. Since the discharge of Thornton under the bankrupt act, he has acquired by deed the title of the purchasers at sheriff's sale under the Hinsdale execution.

The record states that the question of bankruptcy was stricken out and then follows the entry, "Demurrer sustained and appeal by plaintiffs."

Putting out of the case all the allegations connected with the going into bankruptcy of A. G. Thornton and his final discharge, we have upon the demurrer the following legal questions:

1. Are the facts sufficient in law to entitle the plaintiffs through the equity of J. W. Lancashire & Co. or the survivor of the members of the firm for a title as against A. G. Thornton, to require of the court to adjudge between that equity and the supposed conflicting equity of Thornton to retain the legal title until the outstanding $2,500 of the purchase money is paid, and another equity in him supposed to consist in his new legal title acquired from the purchaser at sheriff's sale under Hinsdale's execution.

2. If such equity may be asserted by plaintiffs, may it be done by independent action in the superior court, or must it be by proceeding supplementary to execution before the clerk in whose office their judgments are docketed.

3. If the remedy by action in the superior court be proper, then can plaintiffs proceed without making parties to the action the heirs of Morehead and Lowery, the two deceased members of the late firm of J. W. Lancashire & Co.

The instrument executed by Thornton to the members of the firm of Lancashire & Co. at the time of the purchase, though not effectual to pass the title, had at least the efficacy of a memorandum in writing sufficient under the statute of frauds to enable the intended grantees to compel a correction of the same or the re-execution of a proper conveyance to them, and on a suit brought for that purpose, the correction or the execution of a new deed would have been decreed notwithstanding the non-payment of the $2,500 bond, because, under the contract, the deed was to have been made before the payment of that sum, and un-

less there was some equitable ingredient to prevent, the decree would have been made. Adams' Eq., 169; *Simmons* v. *Spruill*, 3 Jones' Eq., 9. In our state the vendor's lien does not exist as in England, but in place of it, the title retained is the only security to the vendor, and if he part with the title, then the purchase money is on the personal responsibility of the vendee, and in the case of an inoperative conveyance, as in this case, as the title was not intended to be retained, the court would, as a general thing, decree the instrument to be made perfect as it was to have been. Adams' Eq., 128; *Simmons* v. *Spruill, supra.* But on application to a court of equity for correction or re-execution in a case like this, where a portion of the purchase money is unpaid, it is not a right compulsory on the court to grant it, but it is a matter within the sound discretion of the court to grant the relief prayed without or with a prepayment of, or liability for, the unpaid purchase money, as the events may or may not render it unjust to decree performance of the contract *in specie* as it was originally made; and whether in this case, there be or be not any events sufficient to justify the court to hold the equity of the plaintiffs as subject to the prior payment of the purchase money still outstanding, the court below has not said, and therefore we are not called upon to express an opinion.

Seeing then that the firm of Lancashire & Co. had an equity for the title against Thornton, and that J. W. Lancashire as surviving partner succeeded solely to that equity to be administered in payment of the joint creditors, it remains only to enquire on the first ground of demurrer whether the plaintiffs have the right to assert that equity in their own behalf.

The equity for title by way of correcting the instrument given for the land, existing at the first for the whole firm, became at last an equity by construction of a court of equity for John W. Lancashire, the surviving partner, in whom by

the ordinary doctrines of equity and the provisions of our statute, (Bat. Rev., ch. 42, § 2,) that right is declared to be vested in order to enable him to wind up the partnership and pay its debts. The plaintiffs having reduced their claim against the firm to judgment against Lancashire, the surviving partner, the docketing of the same operated a lien in their favor on the equity of the judgment debtor to have the title, and that equity under the construction of this court as to the meaning of the expression "real property" used in our statute, was such an interest as would be affected by the lien of a docketed judgment. *Hoppock, Glenn & Co.* v. *Shober,* 69 N. C., 153; *McKeithan* v. *Walker,* 66 N. C., 95. Such being the equity in the judgment debtor as against Thornton and such the lien of the plaintiff's judgment on that equity, the plaintiffs had a clear right in some form, upon the footing of their judgment lien or the well established and recognized principles of courts of equity, in the case of a dissolved partnership, through the equity of one partner against another, to have the joint estate applied to the joint debts for their indemnity and exoneration, to maintain an action for the enforcement of the lien of their judgment and the payment of their debt otherwise out of the joint estate. Adams Eq., 243, note 1; 1 Washburn Real Property, 423; Lindley on Partnerships, 576.

It therefore seems to us that the facts of an ascertained debt of the plaintiffs and a lien therefor on an equity of John W. Lancashire, surviving partner of Lancashire & Co., under the contract of sale of Thornton, for the tract of land mentioned in the complaint, are sufficient in substance and form, as stated in the complaint, to authorize the court to proceed to trial of the action on its merits, unless there be something to prevent in the other grounds of the demurrer which we will proceed to consider.

II. The second ground of demurrer in substance presents the question, whether the plaintiffs granting their right to

assert the equity of the partnership against A. G. Thornton, may do so by action in the court at term instead of by proceedings supplementary to execution in the cause in which their judgments were obtained: In *McKeithan* v. *Walker*, *supra*, it was held " that in order to sell an equitable estate in land not liable to sale under the act of 1812, the plaintiff in the execution must still resort to his action as formerly, to his bill in equity to ascertain the rights of the parties and enforce the lien of his judgment " and in such case of judgment operating a lien on the equitable right equivalent to the levy of an execution, and in all cases where an execution is levied on property, it was held that supplemental proceedings would not lie, unless after a sale of the property affected by such lien or levy, or the insufficiency of the same to satisfy the judgment be established by affidavit or otherwise. In *Hoppock, Glenn & Co.* v. *Shober*, *supra*, one Owen had the legal title to land which he had purchased for and with the money of one Crane, and upon the allegation, that the docketed judgment was a lien on the interest of Crane therein before the same was conveyed to Shober in trust to secure the United States, the plaintiff in the judgment proceeded by original action, and on appeal to this court, although no question seems to have been made as to the remedy adopted, this court took cognizance of the appeal without any question of the propriety of the action and herein cite *McKeithan* v. *Walker.* Also in the case of *Hutchison* v. *Symons*, 67 N. C., 156, the court *arguendo* cited the case of *McKeithan* v. *Walker*, and in speaking of the principle established by it, said, "if the debtor has property on which the creditor has acquired a lien, it must be shown either by a sale of the property or by affidavit that the property is insufficient to pay the debt, otherwise the application for supplemental proceedings has no sufficient ground to rest on." In other cases, some by original action where real property was concerned and some by proceedings sup-

plementary to execution in relation to personalty, the same case is cited, and in not one of them is the principle of the necessity of an action to enforce the lien of a judgment on equitable interest in land not liable to sale under execution, (established by *McKeithan* v. *Walker*,) reviewed.

The result of the cases, including the late case of *Rand* v. *Rand*, 78 N. C., 12, is that judgment creditors *must* resort to supplementary proceedings as provided for in the code, in all cases except the single one of a judgment operating a a lien on equitable estates in land which cannot be sold on execution, and *may* commence such proceedings even in that case upon affidavit of the insufficiency of the property affected by the lien to pay the judgment; but otherwise the proceeding to enforce the lien of a judgment on equitable interests in land not liable to execution under the act of 1812, *must be* by action in court, and the proceeds applied, if sufficient, before the judgment debtor can be subjected to supplementary proceedings. The line of distinction is distinctly drawn and now well known and generally conformed to in the profession. And as less circuity is made by the action in court than would be by a receiver on supplemental proceedings, who would have to bring an independent action and then report back to the clerk in the cause for final orders, we are inclined to stand by the decision in *McKeithan* v. *Walker* in the limited application it has to equitable interests in land. We must therefore hold that the second ground of demurrer should have been overruled.

III. The last ground of demurrer is that the heirs of the two deceased members of the firm, Morehead and Lowery, are not parties to the cause and that the cause cannot proceed without them : It is not every one who may have a remote interest in a cause who must be made a party, but it will suffice if those are before the court who are in a legal sense necessary to the determination or settlement of the questions involved. C. C. P., § 61. Here, the interest

of the partners was an equity to sue for title to the land, and existed at first in the whole firm; but now by the rules of law, in order to the payment of the debts and the settlement of the partnership business, that equity has survived to, and resides in the survivor, J. W. Lancashire. And by statute and the decisions of this court, that interest in the language of the law is vested in the survivor. Bat. Rev., ch. 42, §2; *Waugh* v. *Mitchell,* 1 Dev. & Bat. Eq., 510.

It appears from the complaint that the partnership has no means except the land averred to be worth not more than $1,000, and that there is besides the plaintiffs' debt, an outstanding debt to Thornton for the purchase money, either debt amounting to more than the land will sell for. Thus it is seen that the heirs of the deceased members of the firm could not have more than an imaginary prospect in a possible surplus after paying the debts. If the action were by Lancashire instead of by the plaintiffs claiming through him, the heirs of Morehead and Lowery could not hinder a decree to sell the land, apply its proceeds, and have the legal title conveyed to the purchaser upon a mere suggestion of a possible interest in them. And so the firm appearing to be insolvent without the possibility of a surplus from the land in the complaint mentioned, their absence from the case as parties ought not to delay the progress of the suit, as there is no legal title by descent in them to be affected by the decree.

We must therefore declare our opinion to be, that neither of the grounds of demurrer is sufficient in law to justify a refusal of defendant to answer to the action, and the judgment of the court below is reversed. This will be certified that further action may be had according to law.

Error.                                                     Reversed.