C. P. MENDENHALL v. D. W. C. BENBOW, Adm'r.

*Executors and Administrators.—Partnership.*

1. An administrator who settles an estate under decree of court, is protected against the claims of creditors and relieved from personal liability, if no *mala fides* be shown in his conduct of the proceedings.

2. The claims of a surviving partner upon the proceeds of sale of deceased partner's half of real estate (here mill property) to reimburse him to the amount of half the expenditures incurred in the conduct of the joint business and improvements put upon the property, constitute a prior incumbrance and must be paid to the postponement of creditors of the deceased partner. See Bat. Rev., ch. 42, § 2.

(*Williams* v. *Maitland*, 1 Ired., Eq., 92; *Beal* v. *Darden*, 4 Ired., Eq., 76; *Deberry* v. *Ivey*, 2 Jones Eq., 370; *Baird* v. *Baird*, 1 Dev. & Bat. Eq., 524; *Ross* v. *Henderson*, 77 N. C., 170; *Patton* v. *Patton*, Winst., Eq., 20; *Summey* v. *Patton*, Ib., 52; *McCaskill* v. *Lancashire*, 83 N. C., 393, cited and approved.)

CIVIL ACTION tried at Spring Term, 1880, of GUILFORD Superior Court, before *Seymour, J.*

The plaintiff appealed from the judgment below.

*Mr. John N. Staples,* for plaintiff.
*Mr. Jas. T. Morehead,* for defendant.

SMITH, C. J. The plaintiff commenced his action, on January 26th, 1869, against L. D. Orrell to recover the moneys due on three several bonds executed by him at different dates during the year 1864, the scaled value of which principal is in the aggregate $559.32 Orrell died in April thereafter, and the defendant, having been appointed his administrator with the will annexed became a party in his stead, and at spring term, 1870, filed an additional answer in which he denies that he has any assets applicable to the plaintiff's demand.

The testator and one George W. Yarboro, partners under

the name of Orrell & Yarboro, were as such owners of a small tract of land on which had been erected a valuable mill which was run and operated for their joint benefit, and the testator also owned a small lot whereon he resided at the time of his death, which was afterwards assigned to his widow as part of her dower.

The estate being insolvent, proceedings were instituted in the names of the defendant, as administrator, the said Yarboro and Eliza Orrell, the widow, against the devisees for license to sell the testator's moiety in the mill property and the reversionary estate in the lot, under which both were sold, the former at the price of $1,895, and the latter for $50, whereof $141 was allowed for deficiency in the former allotment of dower.

Yarboro asserted a claim upon the funds for expenditures made by him in the reparation and improvement of the mill and machinery which under the covenant obligation of the deceased entered into October 7th, 1868, was to be a lien on the proceeds and profits of the mill and to be paid therefrom. To ascertain the amount of this claim and its validity and the resources of the firm, a reference was ordered and the referee reported that upon an adjustment of partnership matters the resultant indebtedness of the firm to Yarboro was $1,208.10, one-half whereof increased by the sum admitted in the said covenant to be also due him, and making in the aggregate $1,139.66, was a charge upon the fund derived from the sale of the testator's moiety of the mill property; and the court thereupon adjudged that the said Yarboro be paid his said claim, and that the residue after discharging the costs of the suit be retained by the defendant to be used in a due course of administration.

Upon the coming in of this report, His Honor ruled that the defendant was liable only for the moneys coming into his hands under the decree in that cause, and that it being unimpeached, it afforded the defendant full protection

against the claims of any creditor for so much of the fund as is therein appropriated to the widow in lieu of the residue of her dower and to the debt of the surviving partner.

To this ruling the plaintiff excepts and the grounds of his opposition are embodied in these propositions contended for in the argument of his counsel:

1. The claims allowed Yarboro were not sufficiently proved, nor resisted in good faith by the defendant as shown in the record.

2. The debts due the plaintiff were specialties and entitled to priority of payment over the debts due Yarboro by simple contract.

3. The issue as to the possession of assets refers to the time when the defense was set up and is not affected by payments made subsequently thereto.

These propositions in our opinion cannot be successfully sustained, and we concur in the rulings of His Honor upon them.

I. The disposition of the proceeds of sale of the testator's interest in the mill among the parties to that proceeding is at once binding on the defendant and a protection to him against creditors or others, as is every other judgment rendered against him *in invitum,* unless there is collusion or a culpable disregard of the interest committed to his keeping, when the exercise of a reasonable diligence would have prevented the loss. The rule of personal responsibility has thus been laid down: "It ought to be a plain case of neglect of duty which holds an executor responsible for a loss by holding on to property of this description, (stocks in a steamboat company) *bona fide* and in the exercise of his best judgment." GASTON, J., in *Williams* v. *Maitland,* 1 Ired., 92.

"An executor like other trustees is not to be held liable as insurers or for anything but *mala fides* or want of reasonable diligence." RUFFIN, C. J., in *Beall* v. *Darden,* 4 Ired. Eq., 76.

" He is answerable only for that *causa negligentia* or gross neglect which evidences *mala fides.*"   NASH, C. J., in *Deberry* v. *Ivey,* 2 Jones Eq., 370.

. There are no facts shown to impeach the integrity of the defendant's conduct in the management of his suit to convert his testator's lands into assets, and to make him responsible for such as he was not permitted to receive, and which by the action of the court, when it does not appear that resistance would have availed anything on his part, were otherwise appropriated. It would be a hard measure of responsibility to hold trustees under such circumstances personally accountable although loss may have ensued.

II. But the proceeds of sale of the testator's half of the mill were properly chargeable with its share of the expenditures incurred by Yarboro in the conduct of the joint business and in the improvement put upon the common property enhancing its value; and the interest of the testator therein applicable to his individual debts, could be reached by his administrator only when they were discharged and that resultant interest ascertained.   The act of assembly, (Bat. Rev., ch. 42, § 2) which destroys survivorship in joint estates whether real or personal, expressly provides that when such estates are held for purposes of trade, commerce or manufacture, and one tenant dies, the estate shall be " vested in the surviving partner in order to enable him to settle and adjust the partnership business or pay off the debts which may have been contracted in pursuit of the said joint business," and then he shall account to the parties entitled, as heirs, executors, administrators and assigns of the deceased partner.   As each party has an equitable right, during the continuance of the partnership and until its business is settled, to have the partnership assets applied in extinguishment of the partnership liabilities for his own exoneration before any part can be taken for individual debts, so in case of death the surviving partner is vested

with the control of the joint property and may administer it in paying off the joint liabilities, and the representative of a deceased partner can only call on him for his share of what is left.

"There can be no division of partnership property" in the language of RUFFIN, C. J., in *Baird* v. *Baird*, 1 D. & B. Eq., 524, "until all the accounts of the partnership have been taken and the clear interest of each partner ascertained."

"When land is purchased with the money of a partnership and conveyed to partners by name" observes RODMAN, J., in the recent case of *Ross* v. *Henderson*, 77 N. C., 170, "the law considers the grantees as tenants in common and takes no notice of the equitable relations arising out of the partnership. In equity, however, it is held that the partnership agreement devotes the partnership property to partnership purposes and creates a trust in it for the security of the partnership debts. On the insolvency of the partnership, it is primarily applicable to the payment of the debts of the partnership to the postponement of the creditors of the several partners." See also *Patton* v. *Patton*, 1 Winst. Eq., 20; *Summey* v. *Patton, Ib.,* 52; *McCaskill* v. *Lancahsire*, 83 N. C., 393.

It is manifest then that if the claims of the surviving partner were truly due (and the objection is mainly directed to the insufficiency of the proof on which they were allowed) they constituted a prior incumbrance upon the fund and were properly discharged therefrom, and the adjudication in favor of their obligation cannot be assailed by the plaintiff in the absence of evidence of a fraudulent or collusive connivance of the defendant in bringing it about.

III. There is no *devastavit*, and no misapplication of assets can be imputed to the defendant so as to raise a question as to the dignity of the plaintiff's debts, since what was done

was by order of the court to which the defendant submitted.

IV. The issue raised by the answer is as to the possession of assets at that time; and as the defendants could not afterwards misapply any he then had to the plaintiff's injury, so he is not chargeable for any he may afterward have acquired.

It does not appear then that he had even such as were derived from the land sales. When those assets were received it does not appear. The land was sold in February, 1870, on a credit of six months, and while the payment was anticipated by the purchaser, it is hardly probable it was made when the answer was filed. But it is sufficient for the present purpose that it is not affirmatively shown that he then had the moneys, and until payment, they were not assets in his hands.

The plaintiff's exceptions are overruled and it must be declared there is no error in the record, and the judgment must be affirmed.

No error.                                    Affirmed.