LYDIA PATTERSON and others *v.* JOHN W. WADSWORTH, Admr.

*Jurisdiction of Supreme Court over questions of fact—Executors and Administrators.*

1. In an action at law, this court cannot look into the evidence to see what facts it warranted a referee in finding.

2. An administrator will be held responsible if he is guilty of gross negligence in failing to collect a debt due the intestate's estate; but otherwise, where he in good faith does not engage in a fruitless litigation at the expense of the estate, and his management of the same is such as a prudent man would display in his own business.

(*Hawkins* v. *Savage*, 75 N. C., 133; *Bruner* v. *Threadgill*, 88 N. C., 361; *Deberry* v. *Ivey*, 2 Jones' Eq., 370; *Nelson* v. *Hall*, 5 Jones' Eq., 32; *Mendenhall* v. *Benbow*, 84 N. C., 646, cited and approved).

CIVIL ACTION tried at Spring Term, 1883, of ROWAN Superior Court, before *Graves, J.*

This action is upon the bond of the defendant, as administrator of Chauncey Burnett, deceased, and was referred to a referee to state an account of the administration of the assets of the intestate's estate. Upon return of the report, the plaintiffs filed exceptions thereto, which were overruled by the court, report confirmed, and judgment rendered accordingly, from which the plaintiffs appealed.

*Mr. Kerr Craige,* for plaintiffs.
*Mr. J. S. Henderson,* for defendant.

SMITH, C. J. Chauncey Burnett, a temporary resident in Rowan county, engaged in manufacturing and selling wheat fans before and up to the commencement of the late war, soon after left the state and returned to New York, the state of his domicil. A portion of his property here was thereafter seques-

tered under an act of the Confederate congress, passing into the hands of J. I. Shaver, receiver, by whom its proceeds were paid over to that government. At the close of hostilities, Burnett returned and collected a considerable amount of his effects, and some money from parties who had bought at the receiver's sale. He then went back to New York and died on June 9th, 1866. Two administrations were there granted on the intestate's estate; first, general, to Emily Burnett, and upon her decease, *de bonis non*, to A. Eugene Burnett. No administration was granted in this state until August 6th, 1878, when letters issued to the defendant and he executed the bond now in suit. Shaver died in 1873. No action has ever been instituted to recover the sequestered fund from him or his personal representative, though he was, and his estate now is, solvent.

The appeal brings up for examination a series of exceptions to the report of the referee of the defendant's administration, which, upon the hearing, were overruled by the court, and judgment rendered in favor of the relators for one-half of the sum found due to them and other distributees not parties to the action.

The first three exceptions, presented in different aspects, refer to the defendant's failure to return an inventory, which involves only nominal damages, and, as the relators recover judgment and their costs, are not deemed material.

The last two exceptions are to the referee's omission to charge the administrator with two small specified sums ($32.40 and $15.02), in regard to which there are no facts found to enable us to see whether in law the exceptions are well taken, and that they ought to be charged against the defendant.

This being an action at law, we cannot look into the evidence to see what facts it would warrant the referee in finding, and it is only upon facts ascertained that a question of law can arise, to which, in this appeal, we are confined.

The exceptions, numbered 4, 5 and 6, together, present the question whether the defendant, by his inaction and failure to

prosecute suit for the recovery of the sum claimed to be due for the seizure and conversion of the intestate's effects by Shaver, has made himself personally liable therefor. Indeed, this was the only matter pressed in the argument in this court.

In our view, the exceptions which seek to fasten this responsibility upon the defendant for his alleged laches are untenable, for reasons we proceed to state:

1. The intestate did not assert such claim against the receiver while he was in the state looking after and gathering up his effects, of which some were obtained from persons who had purchased from the receiver, and the defendant might well infer from this omission that the claim could not be successfully maintained. He has but followed the course pursued by the intestate and shown equal diligence.

2. The action could have been brought by the intestate, while it was barred by the statute of limitation when the letters of administration issued to the defendant, and this was a complete defence.

The cause of action, having accrued before the introduction of the new mode of procedure, is controlled by the limitations prescribed in the Revised Code, ch. 65, and but for the force of the suspending enactment, would have begun to run during the life of the intestate, and did begin to run as soon as that enactment ceased to operate in repressing it. In three years from January 1st, 1870, the bar became complete, for there was no such extension of time to prevent, as is provided in C. C. P., §43. *Hawkins* v. *Savage,* 75 N. C., 133; *Bruner* v. *Treadgill,* 88 N. C., 361.

We cannot see how a dereliction of duty can be imputed to the defendant in refraining, after his appointment, from prosecuting an action which had to encounter certain defeat if the defence under the statute was interposed, and with every assurance that it would be for the protection of the estate of Shaver.

3. Good faith and reasonable diligence is the measure of the responsibility of fiduciaries in the management of trusts committed to them, such as prudent men would, under the circumstances,

be expected to exercise. It is not a test of liability whether the claim if sued on could possibly have been collected, but whether the defendant was called on to institute a hazardous suit, at the expense of the estate, with no assurance of success and to encounter certain defeat if resisted.

"A personal representative, guilty of gross negligence or willful default in failing to collect a debt due the estate, will be personally chargeable with it: otherwise, where his conduct was such as a prudent man, in the management of his own business, would have displayed, and he has made proper exertion to collect and has acted in good faith," Schouler Exrs., §308; or, it may be added, when it is plain such exertion would have proved fruitless.

"An executor is not an insurer," remarks NASH, J., "nor to be held liable as such in taking care of the assets which came to his hands, nor in collecting them. He is answerable only for that *crassa negligentia*, or gross negligence, which evidences *mala fides.*" *Deberry* v. *Ivey*, 2 Jones' Eq., 370.

"Executors should not be held responsible, as insurers," is the language of MANLY, J., reiterating the rule. "All that a sound public policy requires is that *they shall act in good faith and use ordinary care.*" *Nelson* v. *Hall*, 5 Jones' Eq., 32. To the same purport is *Mendenhall* v. *Benbow*, 84 N. C., 646.

We therefore sustain the rulings of the court and affirm the judgment.

No error.                                        Affirmed.