J. C. HALLIBURTON and others, Executors of Jacob Harshaw, v. JOHN CARSON, Executor of Geo. M. Carson, and others.

*Executors and Administrators — Evidence,* § 590 *— Statute of Limitations and Presumptions — Bonds payable in Coin — Relations between Personal and Real representatives of Deceased Debtor.*

1. An executor, when sued for an account, is entitled to credit for payments made by him on debts of his testator, although such debts were barred by the statute of limitations, or were, under the statute of presumptions, presumed to have been paid at or before the death of the testator. The law does not require an executor to make his testator "sin in his grave," by setting up an unconscientious defence.

2. Especially is the above true, when the testator, shortly before his death, told the executor that he owed the debts in question, and wished them paid.

3. In such a case, the testimony of the executor as to the statements of his testator, that he owed the debts, &c., is not rendered incompetent by sections 580 and 590 of *The Code.*

4. An executor, acting under the rule laid down in *Roberson* v. *Brown,* 63 N. C., 554, in settling a bond of his testator's, payable in coin, is protected, although the rule established by that case is at variance with the ruling of the Supreme Court of the United States.

5. The ruling in *Bevers* v. *Park,* 88 N. C., 456, as explained and corrected in *Speer* v. *James,* 94 N. C., 417, with reference to the relations existing between the personal representative of a deceased debtor, and his devisees and heirs at law, confirmed.

CIVIL ACTION, heard upon exceptions to report of referee G. F. Bason, by *MacRae, J.,* at Spring Term, 1886, of Mc-DOWELL Superior Court.

The defendants, other than John Carson, appealed.

*Messrs. J. G. Bynum* and *G. N. Folk,* for the plaintiffs.
*Messrs. J. B. Batchelor, Jno. Devereux, Jr., P. J. Sinclair* and *W. H. Malone,* for the defendants.

SMITH, C. J.   This suit, instituted in January, 1876, by the plaintiffs, executors of Jacob Harshaw, who died in 1868, against the defendant John Carson, executor of George M. Carson, on behalf of themselves and other creditors, is to enforce a sale of the devised land of the testator, George M., in order that the proceeds, as far as necessary, may be applied to the discharge of his indebtedness, upon an allegation of an exhaustion of the personal estate.   The devisees were subsequently made co-defendants.

After the complaint and other pleadings were put in, an order of reference, by consent of counsel, was made to John D. Shaw, to take and state the administration account, and to ascertain and report:

1. The number and value of the shares received by the several legatees, and when taken possession of by each.

2. The value of each of the tracts of land devised by the testator, George M.

And 3. The refunding bonds, executed by the legatees, each set out in its essential particulars.

At Spring Term, 1881, the defendant Emily Carson having died the year previous, her administrator was permitted to become a party in her stead, and he filed an answer, adopting that of J. McD. Whitson and wife Rebecca, and of ...... Gowan and wife. At June Term, 1883, the relations between the original defendant, John Carson, and those subsequently introduced into the action, being adversary, the said Whitson and wife, on behalf of all of the defendants last mentioned, put in an answer, controverting the allegation contained in the answer of the former, the executor, to which he made reply.

The referee made his report, to which objections were taken, and, upon motion of counsel for the contesting defendants, by whom we designate all except the executor, and upon the ground of newly discovered matter, omitted in the report, it was set aside, except in so far as it ascertains the plaintiffs' debt, and as to this, it was confirmed. It was then, by consent, referred to W. W. Flemming, to find particularly the sum due the plaintiffs, and he did so, during the term, reporting a balance of $3,373.37, whereof $2,167.64 is principal money.

Thereupon, at the instance of plaintiffs' counsel, it was "considered by the Court, that the said sum of $3,373.37, being principal and interest, is the amount of the debt of the plaintiffs, and that they are entitled to judgment ascertaining the same, but in what proportion the same shall be paid by the devisees of said George M., and others, and at what time, is left open for adjudication, when the report of G. F. Bason, to whom the cause has again been referred for an account, shall be returned." And it was further ordered, "that this cause be recommitted, and referred to George F.

Bason, to take and state an account of the estate of George M. Carson, which has come, or ought to have come, from all sources, into the hands of John Carson, the executor, and what disposition has been made of such estate, and especially, that he state what funds have come into the hands of the said executor from the estate of William Carson," (he being also executor of the latter,) "which ought to be subjected to the debts of any one, and to him, as executor of George M. Carson; what personal property of the estate of said George M. came to the hands of each of his legatees, and the value thereof; what real estate of the said George M. came to each of his devisees, and the value thereof; and in case it shall appear that there is not in the hands of the executor sufficient assets to pay off the plaintiffs' debt, then to ascertain, and report, what sum each of the devisees, including the executor, is liable to contribute to the payment of the plaintiffs' debt; that, in ascertaining what sums ought to have come into the hands of the executor, the referee may enquire what estate, either by devise, descent, conveyance or gift, if any, has come to the executor from the estate of William Carson, subject to the payment of debts due him, as executor of said George M.

The referee will find all the facts that he deems material, and state his conclusions of law; state his account separately, and report to the next term."

The referee proceeded to execute the commission, and made the required report, with separate findings of fact and of law, arising upon them, from which it appears, that the executor has paid towards the liability of the testator, and the expenses of administering the estate, in excess of the assets, with which he is chargeable, the sum of $3,341.92.

Exceptions, twelve in number, were filed by counsel of the contesting defendants, after the ruling upon which, and exceptions entered thereto, in so far as they were not sustained, the account was re-referred to the same referee,

for reformation, in the particulars requiring correction, and again reported to the Court, with the evidence taken upon the matters in controversy. Of this report, it is not out of place for us to remark. that it indicates great care and pains-taking, and the bestowal of much labor, in eliminating from the mass of evidence, the points in dispute, and in present-ing them, in a clear and intelligible form, for the reviewing Court.

Similar objections are made by the same party, to the re-formed report, nine in number, whereupon, the Court pro-ceeded to render final judgment, and the contesting defend-ants appealed.

The question, whether the lands devised to the executor in the codicil to the will, made after the death of some of the devisees, were primarily liable to be sold to meet the de-mands against the testator's estate, in relief of the other devised lands, or whether all were to contribute, was decided when that matter was before us, upon a former appeal, in favor of an equal liability, and is now put out of view. *Halliburton* v. *Carson*, 86 N. C., 290. We pretermit an ex-amination of the exceptions to the referee's first report, for the reasons: (1) that it is embodied substantially in the last, to which a new series of exceptions has been filed ; and (2), because the argument here upon points excepted to, and expected to be decided upon the appeal, has been confined to this series. Indeed, the argument for the appellant was still more restricted, calling our attention only to a part of that series of rulings, to which error is imputed. We limit, therefore, our inquiries into the sufficiency in law of the ex-ceptions to the last report:

1. The first exception is, to the referee's conclusions, that the statutory limitations of three, seven and ten years, as well as the statutory presumption of payment, is not avail-able as a defence to claims paid that had been due more than ten years as an allowed credit to the executor. The

objection applies to the claims, the vouchers showing payment, which are numbered 7 and 16 in the report, and which had been overdue, and were reduced to judgment without resistance by the executor, and afterwards paid. These claims were due to Martin E. Carpenter, by two notes under seal, each in the sum of $550, on May 9th, 1850, and executed by the testators, George M. and William, suits to recover which were commenced on January 30th, 1867, and to R. C. Burgin, guardian of James Conley's heirs, by note under seal, executed by J. L. Carson, principal, and George M. Carson and John Carson, sureties, for $2,262, principal and interest, when reduced to judgment, the last payment being made by A. Burgin, administrator of the principal debtor, on July 5, 1873, of $259.50, generally against the surety, John Carson, and guards against the representatives of the other obligors, at Fall Term, 1869.

The defence to these credits is, that more than ten years had elapsed after the maturity of the bonds,. and they are presumed to have been paid, and are barred by the statute of limitations, applicable to claims against the estate of deceased debtors.

2. The admission of the testimony of the executor to show the subsisting indebtedness of the testator, George M., to Carpenter, and others, which ͛ consisted of his declarations made to the witness. whom he made executor in some three months before his death, in which conversation, he said he wanted the Carpenter debt paid. The objection to the declaration of the deceased is based upon the prohibitory provisions of *The Code,* § 590.

The referee, in our opinion, misconceives the nature of the objection to the allowance of the credits, in requiring them to be set out with the same particularity as the rules of pleading require, when the statutory bar is relied on to defeat the plaintiffs' action. The complaint is, that the executor did not set up this defence, and thus protect his

testator's estate from the demands, and that he was remiss and neglectful of official duty, and should bear the loss himself. The bonds are not in suit, and no statutory bar can now be set up. The strict rule of pleading, which the referee invokes in support of his action, has no application to the case, and the controversy, as to any particular item of claim and resisted credit, springs up when it is offered in the taking the account, and must be disposed of by the evidence in support of, and in opposition to, its allowance, then to be produced and heard. The only inquiry is, shall, under such circumstances, money paid upon a debt, presumed to have been paid before, be admitted without proof, in rebuttal, showing that it has not been paid, or that, acting in entire good faith, the executor had sufficient reasons for his belief and action in making the payment?

Now, as to the Carpenter notes, if the evidence of the executor is to be received, the testator, just before his death, (and, perhaps, after making his will, for its date is not given,) declares to the person, who is to settle his estate, that he does *owe this debt*, and another due to a named creditor, as well as some others of small amount, and not specified, and *wishes it to be paid*, and, in his will, he provides for the payment of all his just debts. If, then, the testimony, coming from the source that it does, is admissible, it fully rebuts the presumption of payment, and leaves the debt as subsisting in full force, notwithstanding the lapse of time, and justifies the executor in submitting to the judgment without resistance.

We come now to consider the competency of the witness to testify to the declarations of the testator, under sections 580 and 590 of *The Code*, the interpretation of the latter of which has been a prolific source of controversy heretofore. The main purpose to be subserved, in the enactment, is, as stated by the late Chief Justice, in *McCanless* v. *Reynolds*, 74 N. C., 301, and reiterated in *Thompson* v. *Humphrey*, 83 N. C., 416, that

of the parties to a transaction or communication, one being dead, the survivor shall not be permitted to speak of it, because the mouth of the other is closed, so that his version cannot be heard. This, however, presupposes some antagonism of interest as to the subject-matter of the evidence then existing, which might be favorably affected as to one, and unfavorably as to the other of the parties, between whom it takes place. Thus, when the controversy was, as to whom the deed was made by the grantor, he was allowed to testify that it was to deceased party, under whom the defendant claimed, because there was no controversy as to the witness's ownership, and he was indifferent as to the results of the issue. *Gregg* v. *Hill*, 80 N. C., 255.

And so are held to be competent, as outside the purpose of the statute, declarations and acts of the deceased upon a question of mental capacity, through whatever witness the testimony is derived. *McLeary* v. *Norment*, 84 N. C., 235.

In the case before us, the executor, being also a legatee and devisee, had a common interest, with the others, in refusing to allow the debt and exonerating the trust estate therefrom. He would in this be promoting the interest of each, and not his own, separate from theirs.

With such information as he had from such a source, not to be distrusted, and under a sense of fiduciary duty, could he rightfully repudiate the liability of his testator, and resist the obligation under the technical rule of presumption opposed to fact; or, if he does not, expose himself to the loss of the whole sum paid?

It is true, that in *Barnawell* v. *Smith*, 5 Jones Eq., 168, BATTLE, J., distinguishes between the liability incurred by an executor or administrator, in refusing to set up the statutory bar, which puts an end to the action, and in not taking advantage of the presumption of payment, raised by the lapse of time, declaring him responsible in the latter case, unless, when a credit for the expenditure is claimed, he can repel

the presumption, while, in the other, he may exercise his own discretion.   He says, that before paying the demand, against which the presumption operates, he " ought to show that the presumption was untrue, and that, in fact, it had not been paid or satisfied," before permitting a judgment to be recovered, or making payment.

But if he has personal knowledge or ample proof of the indebtedness as still subsisting, and acts upon either, we are unable to see why he should be held personally responsible, and be denied the opportunity of giving his reasons therefor, under the old or the recently amended rules of evidence. In all cases, he must act in good faith in protecting the trust estate against unjust demands, but not against those that are honest and just.   The law does not require of him, in the expressive words of another, in opposition to an argument, that it was the legal duty of the representative to plead the statutory bar, " to make him sin in his grave ;" and such is the well established doctrine in this State, under numerous adjudications of this Court.

And again, assuming the testimony incompetent to prove the fact of non-payment, why is it not admissible to refute the charge of culpable indifference and inattention, and show wherefore the indebtedness was not contested, and the good faith of the executor ?

" The legatees or next of kin," remarks GASTON, J., " cannot, in conscience, object to payment, whether voluntary or compulsory, made by the representative of the estate of what was justly due therefrom.   In equity, as respects legatees or next of kin, the estate consists only of what remains after satisfaction of the creditors."   *Williams* v. *Maitland,* 1 Ired. Eq., 92.

Suppose the presumption could have been repelled by frequent admissions and acts of the debtor, to be proved by an indifferent witness, who dies before the administration account is taken, so that any resistance to the action would

have been fruitless, must the executor, who pays the amount after judgment, be disallowed the credit, because the proof cannot then be had? And shall he not be permitted to show his reasons for making a useless opposition to the recovery? .Yet these consequences might follow the adoption of the principle that applies to an action upon the claim itself when in suit, in a controversy growing out of its payment. Unless some difference is recognized, very great hardship might come to the most careful and honest trustee in the discharge of his official duties, and for which the enabling statutes in *The Code* were specially intended, as is apparent from their structure and scope.

The rule would be very stringent, which imposed so great responsibility upon a fiduciary agent left unprotected, when his disbursements, made in fidelity to his trusts, and to be disallowed, because of inability to produce the proofs upon which the claim could have been established, and when resistance would have entailed needless expense. The executor " is answerable only," says NASH, C. J., in *Deberry* v. *Ivey,* 2 Jones Eq., 370; "for that *crassa negligentia,* or gross neglect, which evidences *mala fides.*" To the same effect are *Nelson* v. *Hall,* 5 Jones Eq., 32; *Mendenhall* v. *Benbow,* 84 N. C., 646; *Patterson* v. *Wadsworth,* 89 N. C., 407. We therefore sustain the rulings of the Judge upon these two exceptions.

The Burgin judgment, in many of its features, is similar to that which has been discussed. In some respects, it has peculiarities of its own. John Carson was, himself, a surety obligor, and if the pleadings were to be verified by oath, how could he swear that the debt had been paid when he knew it had not been, and why should he be required to set up for his testator a defense he would not set up for himself? It would be evasive to say the debtors relied upon the protection of the statute, when its presumption was known to be untrue. His duty to the estate cannot be such as to require him to do, for its exoneration, what he could not conscien-

tiously do for his own. Their interests are one and the same, and every motive was against any dereliction of duty in the premises to both.

Besides this, he was not bound to set up an unjust, though legal defence, as the condition of his own recovery from the principal debtor, or from a co-surety, his ratable part of what he may have been compelled to pay, by reason of his personal liability. This has been expressly decided, when the surety failed to plead the statute of limitations to a demand from which, it would have protected him, inasmuch as his right of action commences at the payment. *Sherrod* v. *Woodard*, 4 Dev., 360; *Jones* v. *Blanton*, 6 Ired. Eq., 115.

"There was no obligation on the plaintiff, in law or in equity," are the words of NASH, C. J., in the last cited case, "to plead that statute," (protecting the sureties from liability upon guardian bond, after three years, from the ward's becoming of age and not calling him to an account,) "or rely upon the protection it gave him," citing *Leigh* v. *Smith*, 3 Ired. Eq., 442, and *Williams* v. *Maitland, supra.* This was said of the plaintiffs' claim for a contribution from a co-surety to the bond.

Why is it more his duty to rely upon a defence, not less unconscientious, furnished in the statutory presumption?

With the funds in his hands, the appropriation was at once made by the law. *Ruffin* v. *Harrison,* reported in 81 N. C., 208, and upon the rehearing, in 86 N. C., 190. There was, therefore, no limitation resulting from the lapse of time afterwards, depriving the executor of his right to a credit upon a settlement of the estate.

3. The next exception, pressed with earnestness and force by appellees' counsel, in argument, is, in allowing a credit for an alleged premium, entering into the judgment rendered upon the bond due to Jacob Harshaw, the plaintiffs' testator, and executed by J. L. Carson, William Carson and George Carson, on April 20, 1860, and payable upon its face

"in United States coin." It was reduced to judgment, at Fall Term, 1869, of McDowell Superior Court, and the record thereof was produced before the referee Shaw, showing the amount recovered to be $4,326.45, and upon the back of the bond, besides an endorsed payment of $198.33, is an entry, as follows:

"P'l (intended for principal)_____$2,167 64
Int. to 2d September, 1869_____ 1,037 14
Gold premium, 35 per cent._____ 1.121 67
                                            _____
                                              $4,326 45.

This entry, as well as the computation of interest accrued, sufficiently shows, that the premium upon gold has been added to the amount due upon the face of the bond, which, it is not denied, measured the difference in value between gold and National currency, at the date of the judgment. This method of conversion of the one into the other fund, is in accordance with the decision of this Court in *Roberson* v. *Brown*, 63 N. C., 554, while it is at variance with that of the Supreme Court of the United States—*Branson* v. *Rhodes*, 7 Wall., 229, and *Butler* v. *Harwintz*, Ibid., 258, wherein the currency in the contract is preserved, in kind, in the judgment, and in the execution, that follows. The executor, acting upon the rule laid down in this Court, is warranted in not resisting the recovery of the sum thus augmented by the premium upon coin, and payable in National currency; nor is there any principle in law or equity, known to us, nor any authority referred to by counsel, on which, in consequence of the appreciation of the latter to the level of the former in value, the debt can be reduced, as it could not be increased in case of depreciation.

Besides, the sum adjudged due, in the ruling upon the report of the referee Flemming, acquiesced in, and not the subject of exception, is thus conclusively settled in this very

action; and cannot come up again, except upon a revisal of that adjudication, upon a proper application to the Court.

It is unnecessary to consider the original judgment against the executor, and enquire if the statute of limitations can still be set up, in opposition to the present proceeding, to charge the devised land with the debt; and it is only necessary to say, that the ruling in *Bevers* v. *Park*, 88 N. C., 456, has been misunderstood, and the mistake explained and corrected in *Speer* v. *James*, 94 N. C., 417, where the subject-matter of the relations between the personal representative of a deceased debtor, and his devisees and heirs at law, is fully considered.

The other exceptions, based upon alleged erroneous rulings upon the law, for none others are before us in this appeal, without special and separate reference to each, must be overruled.

There is no error, and the judgment must be affirmed, and it is so ordered.

No error.                                              Affirmed.