Ruffin, C. J.
 

 There can be no doubt entertained, that the deed to Carr Darden was purely upon trust for the grantor.- The circumstances of the parties, and their relation and the contents of the deed, whereby every thing to be done by the grantee is to be'“out of the property” conveyed, and the subsequent acts and acImowledgements of the grantee, taken together, establish the trust conclusively. Indeed, that was admitted in the argument by the counsel for the defendant; but he said that the trust was not for the next of kin of Elisha Darden, but for Elisha himself; and therefore, it was necessary, that Elisha should be represented by an administrator
 
 de bonis non.
 
 That would be true, if the bill was to have that trust declared and executed. But so far from that, it is a bill founded upon a title arising out of the execution of that trust many 3^ears ago. And it is proved, that, in 1822, when Carr Darden united in himself the characters both of trustee and administrator of the
 
 cestui que trust,
 
 he distributed the negroes as the personal estate of his intestate, Elisha Darden. It was, after that, an executed and not an executory trust; and the 'next of kin got in their several shares the same title, which is in other instances obtained from an administrator by distribution.
 

 It would probably follow, as a consequence, that Samuel Darden became absolutely entitled to a legal estate in the negroes allotted as his wife’s share, which he reduced to possession. It is true, that, owing- to his embarrassments, it seems that, as an expedient to keep off creditors, it was held out by the parties, that the title of
 
 *81
 
 the negroes was in Col. Darden, for the benefit of Mrs. Darden, in some way, which prevented them from being liable on executions against her husband. In the same spirit, Col. Darden seems to have claimed also the land, although he held that, according to his own admission, upon trust for Samuel Darden. It argues but little, therefore, against the absolute legal title of the husband, that those persons held out to the world, that the title was in some sort in Col. Darden, so that the negroes could not be sold for Samuel’s debts. But we do not consider it material to dwell on that; for supposing that, upon the division, Col. Darden still retained, by agreement, the legal title of the negroes allotted as Mrs. Darden’s share, it does not appear that it was upon trust to the separate use of the wife. On the contrary, the answer states, that Samuel Darden did not claim the legal title, but admitted it to be in Col. Darden,
 
 “
 
 in trust for his wife,” and in the same language do the witnesses speak; which makes it plain that the idea of those persons was, that a trust for the wife, of slaves in possession, did not vest in the husband, and were not liable for his debts. But that is clearly a mistake, and the husband was in Equity entitled to the negroes, held in trust for his wife, in the same manner as he would, at law, have been entitled to such as she legally owned, and he had reduced to possession.
 
 Murphy
 
 v.
 
 Grice,
 
 2 Dev. and Bat. Eq. 199.
 
 Miller
 
 v.
 
 Bingham,
 
 1 Ired. Eq. 423. Therefore, in this Court, Carr Darden would be just as much liable .to account for the loss, through his laches, of these slaves, which were the equitable property of his intestate, as he would be if they were his property, legally.
 

 The question then remains, and it is the only serious one in the case, whether Carr Darden is chargeable for the value of the negroes, as for a
 
 devastavit ?
 
 The opinion of the Court is, that he is. There is no evidence that the widow set up a title in herself, adverse, to. that of Col. Darden, as the administrator of her deceased hus
 
 *82
 
 band. If she had, it would clearly have been gross negligence to have suffered her and her second husband, however good their characters might have been, to have held the possession upon an adverse claim, for three years, without suit or any effort by the administrator and trustee to regain the possession. But the Court understands, upon the evidence, that the widow kept the negroes
 
 by
 
 the assent of the administrator, and, in truth, held under him, and therefore claiming only her distributive share, as widow. And we consider the case, therefore, as one in which the slaves came fully to the hands of the administrator, and were wrongfully taken from him, or were converted by his bailee; and the point is, whether the circumstances are such as to put him in default and make him chargeable for the value as assets. In the first place, it is to be understood, that an executor, like other trustees, is not to be held liable as insurers, or for any thing but
 
 mala fieles
 
 or want of reasonable diligence. It is both plain justice and plain policy, to hold them chargeable out of their own estates, only on that principle, in order to get responsible and honest men to undertake burdensome trusts. In England, both executors and trustees generally do not receive compensation, as an allowance by law, and therefore they may there-claim all the indulgence due to a person rendering gratuitous service. And we are not prepared, or, rather, do not in this case, feel called on to say, that the commission given to executors in our law changes the rule of responsibility. It may be admitted, that there is a difference as to the administator’sliability to creditors and to next of kin, since he must, at his peril, provide a sufficiency to pay debts, even by a sale of slaves, if necessary, while distribution specifically between next of kin is contemplated, except when a sale is rendered necessary for the purpose of an equal division. But there are several circumstances here, which put the administrator in default, and in decidedly culpable default, in respect to the next of kin, and
 
 a fortiori
 
 in
 
 *83
 
 respect of creditors, both of whom are represented by the present plaintiff. The lapse of three years before a sale ■or division, is, of itself, of considerable weight — sufficient to charge the administrator to creditors, at least; for Lord Holt says, in
 
 Jenkins
 
 v.
 
 Plombe,
 
 6 Mod. 181, that, if perishable goods, before any default in the executor to preserve them, or sell them at due value, be impaired, the executor shall not answer for the full value, but, upon evidence, shall be discharged — clearly implying, that if he has reasonable time to sell them at a fair price, he shall be charged with the full value. He also says, that if the executor omit to sell the goods at a good price, and afterwards they are taken from him, then the value of the goods shall be assets, and not what he recovers; for there was a default in him. We think it clear, therefore, that, these negroes were assets in respect to creditors, though they had been stolen at the late period of three years, and had been wholly lost. And, under the circumstances, the default of the administrator, here, charges him to the next of kin also. It is true, if a trustee is robbed of money, it is laid down, that ho is to be allowed it on account, the robbing being proved, although only preved by his own oath: and that so it is
 
 of
 
 an executor, as of trustees generally. 2
 
 Font. Eq.
 
 179. It may be the same as to a specific thing stolen from the executor. But very clearly, that is so, only when he was in no previous default. But this is not a ■ease of theft. Here, the loss was occasioned by the administrator having, without reasonable precaution, selected an unfaithful person, with whom he entrusted the custody of the negroes, and one, of whose unfaithfulness he had sufficient means of judging, so as to be on his guard. It does not, indeed, appear upon what contract he allowed the negroes to remain with the widow. Perhaps, if the family was increasing and chargeable, it might have been prudent, and to the advantage of the estate, to have left them with Mrs. Darden, until the estate was so far
 
 *84
 
 settled as to authorize a division, and have the child’s share allotted. Birt the defendant has offered no evidence on that point; and, as far as appears, the administrator left them without any stipulation, and as an act of sheer neglect. It is true, the widow was entitled in distribution to one third of them ; but that did not justify the administrator to allow her to keep the whole, at the risk of her disposing of them to the loss of the child. But if that alone were not sufficient to charge him — and it is not necessary to say that it is — the subsequent total neglect to look after the negroes for one year and an half, ^.fter they came into the possession of the second husband, being in all three years, when the character of that person was so bad, that he was generally considered not worthy to be trusted w.ith the possession of slaves, is almost an act of abandonment of the property altogether. It was a duty of the administrator to have taken the negroes into his own possession upon that event, or to have hired them to a responsible person, or to have distributed them. Instead oí doing so, he has, by neglect, allowed his own bailee to convert them, and although he gives no reason why they had not been divided, he asks not to be declared in default, in having selected a person so improper, and in having allowed him to keep the negroes so long. Besides, it does not appear that the administrator made any well directed or honest efforts to regain the slaves. It is true, witnesses say ho left home oh. that errand ; but it does not appear in any way, how long he pursued nor where he went, nor even that he advertised the negroes, nor made enquiries in the parts of the country to which slaves are usually carried from this State. All he did, was to sue an insolvent man by whom they were carried away. It seems to the Court, that both in the transaction anterior to the carrying away the negroes, and in the subsequent conduct of the administrator, as far as it has been made to appear, there was an indifference to the interests of those, for-whom the administrator acted, which even the
 
 *85
 
 most careless man would not have, exhibited in his own affairs, and such negligence as would amount to gross laches. Col. Darden felt it, and acknowledged himself bound to make them good to the child. Therefore it must be declared, that his estate is chargeable for the value of the negroes and interest to the plaintiff.
 

 It is very clear, however, if there are no debts of the intestate Samuel, which, at this late period, is not to be presumed, that the plaintiff ought not to raise out of Col. Darden’s estate, the widow’s share, inasmuch as her second husband has already received it. But as they are not parties to this suit, so that there is no means of enquiring into that matter in the present state of the case, liberty will be allowed the defendant, after the accounts shall have been taken, if necessary, to move to remand the cause, in order to enable the defendant to file a cross bill, and make those persons parties thereto.
 

 Per Curiam.
 

 Decree accordingly.