Nash, C. J-.
 

 The bill charges that the defendant ivas duly qualified as the executor of the last will of'Henry Deberry, and that the plaintiffs, under his will, are legatees; that the defendant, as such executor, among other things, took into his possession two bonds, one executed by John D. Deberry, for the sum of $930,70, the other by George Spiers and Isaac Pipkin, for $550; both of which bonds, it is alleged, were good, the obligors able to pay, and which were not collected, but lost to the estate through the negligence of the defendant.
 

 The answer admits the taking into possession, by the defendant, as the executor of Henry Deberry, of the two bonds set out in the bill, and avers that the obligors were all insolvent, except Pipkin, the surety of Spiers, w;ho, it is alleged, removed to parts unknown to the defendants; that John D. Deber-ry and Isaac Pipkin at the time the bonds came into his hands, resided in Tennessee, the former at Memphis, and the latter at Jackson. Soon after his qualification, he -was advised by his counsel to endorse the bonds over to Mr. Atlas J. Peebles, then a citizen of this State, but who was about to remove to the State of Tennessee, as he, the defendant, could not sue in Tennessee without having the will proved there. This was done, and the bonds, by direction of the defendant, were placed, by Mr. Peebles, in the hands of Benjamin B. Blume, a practicing attorney of the Memphis bar. The defendant alleges that Mr. Blume was the only member of that bar with -whom he wras acquainted; that he had known him while a citizen of this State, settled in Northampton as a law
 
 *374
 
 yer; that he then bore the character of an able lawyer, and energetic collector, and an honest and upright man; but before entrusting the business to him, he made diligent enquiry as to his standing and character at Memphis, and found it to be the same as when he lived in this State; that the bonds were endorsed to Mr. Peebles, who handed them to Mr. Blume immediately on his arrival in Tennessee. Peebles left this State in
 
 February,
 
 1845; suit was
 
 instituted against
 
 Pip-kin, which was duly matured to judgment, and the money collected by Blume. Pipkin obtained an injunction to enjoin Blume from sending the money to the defendant, which was duly dissolved. As to the Drew Deberry bond, the defendant states, that Drew was indebted to Allen Deberry, and the latter, for the purpose of securing his debt, purchased the land of John D. Deberry, and by a provision in the contract, the debtor had a right to redeem at any time within twelve months, upon his debt being paid; that Mr. Blume took from J. D. Deberry an assignment of his right to redeem; and the defendant, by the advice of his counsel, and with the knowledge and assent of two of the plaintiffs, the only adults at that time, did redeem the land, which was afterwards sold by Mr. Blume, as his agent, part for cash, and the balance in two annual payments, secured by bonds, and carrying interest .from the date. The cash payment, amounting to upwards of one thousand and one hundred dollars, was immediately remitted by Mr. Blume to the defendant. The answer further alleges that, soon after he had sent on to Mr. Blume the bonds he held, as executor, he sent on other bonds to him for collection, belonging to him individually, and that he has never received a cent upon them from Mr. Blume. The latter finally failed with a considerable portion of the money due the estate of the testator in his hands, which has been lost. The answer further states that he made several trips to Tennessee upon the business, and repeatedly wrote to Mr. Blume to hasten the collections, who always replied that he could collect the money, and would, immediately on doing so, remit it to him.
 

 
 *375
 
 The answer is fully sustained by the proofs. Has the defendant been guilty of such negligence in the collection of the bonds in question as subjects him to the loss sustained? This is the sole question submitted. There is, indeed, no controversy about the facts. For what degree of negligence is an executor answerable ? An executor, like other trustees, is not an insurer, nor to be held liable as such in taking-care of the assets which come to his hands, nor in collecting them. He is answerable only for that
 
 crassa
 
 negligenUa, or gross neglect, which evidences
 
 mala fides.
 
 The estates of deceased persons are deeply concerned in the existence of such a principle. If an executor was put into the position of an insurer — answerable for any neglect, however slight — unprotected by an honest endeavor to perform his duties, honest and responsible men would rarely be found willing to incur the responsibility; and those only would incur it who calculated the probable gain and loss.
 
 Beall
 
 v.
 
 Darden,
 
 4 Ire. Eq. 76; Freeman
 
 v.
 
 Cook, 6 Ire. Eq. 373. When the bonds in question came into the hands of the defendant, the obligors had all left the State; John D. Deberry and Isaac Pipkin resided in Tennessee; one in Memphis, and the other in a neighboring county. John D. Deberry was in questionable circumstances, and George Spiers insolvent, and removed to parts unknown. It was the duty then of the defendant to make every prudent and reasonable effort to recover or secure the money due on the bonds. He was obliged either to go to Tennessee and take out letters testamentary there, or to employ an agent, properly authorised, to bring suit there. He pursued the advice of his counsel, and transferred the bonds, by an endorsement, to Mr. Peebles, who was well known to him, and who was about to remove to Tennessee. Early in the year 1845, the bonds were placed in the hands of Mr. Blume, a gentleman of high standing at the Memphis bar, and who had been recommended to him by gentlemen whose opinions were entitled to his confidence, and at that time, it appears, he was worthy of the trust. What more could the defendant have done towards the discharge of his duty ? If
 
 *376
 
 lie had gone to Memphis in the first instance and taken out letters there, he would have been obliged to put the bonds in the hands of a lawyer, and trust in his vigilance and honesty in the transaction of the business. lie could not remain there; that, the law did not require, and would have been attended with unnecessary expense to the estate. In this/then, there was no negligence of any kind. Was there any in the succeeding parts of the transaction ? It is alleged that he suffered too long a time (three years) to elapse after the dissolution of the injunction obtained by Pipkin, before he took the necessary steps to collect the money from Plume. Let it be remembered that he had every reason to put confidence in Plume ; and to his repeated letters, the answers wore, that he was using every exertion to collect the monies due upon the different payments for the land, and that those payments were upon a credit of one and two years, and that, in the mean time, he had received a remittance from Plume, to an amount equal to that of both the bonds, as originally due upon them; and as to the Pipkin debt, Plume did not inform him of the dissolution of the injunction.
 

 Ve are not enquiring whether the defendant might not, by greater diligence, have collected the full sum due the estate of Henry Deberry, but whether he has acted in good faith. Taking into view the distance at which he lived from Memphis, where the money was to be collected, the high character of Mr. Plume, as a lawyer and a man of business and integrity, the fact that the defendant had entrusted him with his own claims to collect, of which he has not received anything, and that he received no information that there was danger of Plume’s breaking, until he had entirely failed, we have no hesitation in saying, not only that the defendant has not been guilty of gross neglect, but we are satisfied that, throughout the business, he has acted with good faith, and has used every degree of vigilance which the law required.
 

 It was objected in the argument here, that there was no evidence in the case to show that Pipkin had enjoined Plume from sending the money collected out of him to the defendant.
 
 *377
 
 The real existence of such a record is not the question before us, but whether the defendant had such evidence as should have satisfied a reasonably prudent man that such was the fact. The answer states that the defendant had received a copy of the bill, and had answered it, and the letters of Blume spoke of the suit, its progress and termination. The enquiry is not whether such a suit did exist, but whether the defendant had such proof as ought to have satisfied -a reasonable man using ordinary diligence, that such was the fact. ¥e think the circumstances stated did so authorise him.
 

 The defendant has been guilty of no such negligence as ought to subject him to make good to the estate of his testator the amount of the bonds, or any part of them. We think he used the necessary diligence in their collection.
 

 The defendant must hand over to the plaintiff the notes of Blume, mentioned in the pleadings; and the latter, upon receiving such notes, must execute to the defendant a release for the same. Each party must pay his own costs.
 

 Pbb Cuktam. Decree accordingly.