Battle, J.
 

 This canse, now comes before us for further directions, upon the exceptions taken by both parties to the master’s report. The complainants except to the commissions allowed the defendant, Williams, as guardian, upon the disbursements for bills paid for his wards to mercantile firms, of which he was a partner. We see no reason for this exception. The guardian was as much bound to make payment to the partnership, of which he was a member, for goods purchased for his wards, as he would have been to any other partnership or person. The exception is over-ruled.
 

 But the next, which is to the allowance of a commission on the sum, retained by him, for the board of his ward with himself, is allowed. We suppose that an executor or administrator, cannot claim a commission on a sum retained in payment of his own debt, upon the ground that a retainer cannot be considered a disbursement, withiu the meaning of the statute, which gives commissions. So, we think a guardian cannot consider that as a disbursement, with reference to commissions, which consists merely in keeping in his own pocket, monej7 due from his ward to himself.
 

 The exception of the defendant, Williams, is, that the master has refused to credit him with the amount of a bond and the interest thereon, payable to him, as guardian, by John E. Penman and W. W. Elms. The bond was given for the hire of negroes during the year 1853, and became due on the first day of January, 1854. It was for the sum of $1089, with a credit of $107.50, endorsed as paid on 18th August, 1855. The defendant alleges that the bond was lost without any negligence on his part, but the master reports to the contrary, and the exception brings the question before us for review. Upon an examination of the testimony, and applying it to the law as established in relation to the responsibility of guardians, we are led to the conclusion that the master’s report is-
 
 *65
 
 correct. In the Revised Code, chapter 54, section 23, it is; made the duty of the guardian to- lend out the surplus profits of his wards’ estate upon bonds with sufficient security, but it is expressly required of him “ that when the debtor or his sureties are likely to become insolvent, the guardian shall use all lawful means to enforce the payment thereof, on pain of being liable for the same.” The guardian, then, was acting within the line of his duty in permitting the bond to remain uncollected when it fell due, as both the principal and his surety were then (as he had every reason to believe) entirely solvent. Such, and no more, is the effect of the decision in the case of
 
 Goodson
 
 v.
 
 Goodson,
 
 6 Ire. Eq. 238, to which we were referred by the defendant’s counsel. But when She principal obligor failed, by making an assignment, in trust, for the payment of his debts, in the latter part of the year 1854, it was the duty of the guardian to take immediate steps for the collection of the debt or have it better secured. It will not do to tell us that it is not proved, that he knew of the assignment. lie lived in the same town with the principal debtor, knew that he had but little property except in gold mines, in which he was a speculator, and of the value of which, nobody could tell. He ought then to have kept himself informed of' the pecuniary condition of that debtor, and it was negligence' in him not to have done so, for if he had, he might have saved the debt. After the insolvency of the principal, he was not justified in relying solely upon the surety for so large a sum,, no matter what may have been the apparent wealth and actual credit of that surety. That such has been the construe-, tion of our statute in relation to the duty of the guardian in. such cases, appears, as we think, from the cases of
 
 Boyett
 
 v.
 
 Hurst,
 
 1 Jones’ Eq. 167, and
 
 Nelson
 
 v.
 
 Hall,
 
 5 Jones’Eq. 32.. In the latter case, indeed, the plaintiff, who was an executor,, and who was directed by the will of his testator, to keep the money invested in good bonds, was not held responsible ; but it was, partly, because the sum was very small, only $50, and partly, because the principal became insolvent only a few months before the failure of his surety. Here, the debt was
 
 *66
 
 large, and the principal debtor made his assignment more than twelve months, and died several months, before the failure of the surety and before the guardian made the least effort to collect the debt. In the other cases, cited by the defendant’s counsel, the executors or administrators were not held responsible for the loss of certain debts, but it was because they showed much more diligence in attempting to collect them than can be pretended for this defendant; see
 
 Deberry
 
 v.
 
 Ivey,
 
 2 Jones’ Eq. 370, and
 
 Davis
 
 v.
 
 Marcum, 4
 
 Jones’ Eq. 189.
 

 The exception is over-ruled, and the master’s report, after being reformed in the manner made necessary by our sustaining one* of the plaintiff’s exceptions, will be confirmed.
 

 Pee Cueiam, Decree accordingly.