NATHANIEL WOODY, Administrator, *v.* B. N. SMITH and others.

An administrator, whose sale of the personal property of his intestate has been, after due public notice, conducted fairly and without any connivance with the widow, shall not be held responsible because of her having purchased many articles at a nominal or very low price on account of the by-standers forbearing to bid against her.

The cases of *Johnston* v. *Eason,* 3 Ire. Eq. 330, and *Beal* v. *Darden,* 4 Ire. Eq. 76, cited and approved.

This was a petition by the plaintiff as the administrator of William A. Britt for the sale of land to pay the debts of the intestate upon which a reference was made to the Clerk for a report, and it came on to be heard before *Tourgee, Judge* at the Spring Term, 1870, of the Superior Court of ALAMANCE County, upon exceptions by the defendants to the report which was returned.

The exceptions were sustained, and the plaintiff appealed. A sufficient statement of the case will be found in the opinion of the Court.

*J. A. Graham,* for the plaintiff.
*Scott & Scott,* for the defendants.

SETTLE, J.   This was a petition, by the plaintiff, as administrator, to sell the lands of his intestate for the payment of debts, alleging that the personal property had been exhausted and was insufficient for that purpose.  The defendants resist it

upon the ground that the plaintiff has committed a devasta-vit, in that he permitted the widow to purchase property, at the sale, at nominal prices.   There was a reference to the Clerk, who reports that many articles sold too low, but he goes on to say " from the evidence I am satisfied that the administrator was not in fault, he had advertised and gave the usual notice to the public.   On the day designated there was a large crowd present and the sale was conducted with perfect fairness, the widow bid off many articles at very low figures.   It is a common custom in this country, when a per-son dies intestate leaving a widow, that at the sale of the property, she bids it off at her own figures."   He further re-ports that there is no means to pay the indebtedness without a sale of the real estate.   To this report the defendants ex-cept, for the reason already assigned.   His Honor sustained the exceptions and the plaintiff appealed.

The law gives the widow a year's support and a child's part of the estate.   This appears liberal enough, when we consider the rights of the next of kin, the heirs and credi-tors, especially since all the estate of the wife, both real and personal, is secured to her absolutely by Art. 10, sec. 6, of the Constitution.   But there is nothing prohibiting the widow from bidding at the sale of the effects of her deceas-ed husband, and if the administrator is guilty of no laches, and enters into no combination to suppress bidding or other-wise unduly influence the sale, we are aware of no law that requires him to insure the value of the property.   He had given the notice required by law, and a larger number of persons than usual (according to one witness) were present at the sale, and everything was conducted fairly.   Why did not the heirs and creditors run the property up to its full value ?   Was it because it was more agreeable to their feel-ings not to encounter public sentiment by bidding against the widow, but afterwards to hold the administrator respon-sible for the full value of the property, notwithstanding the

fact that he was prohibited by law from bidding at his own sale ?

But it is suggested that he should have stopped the sale. Suppose he had done so, and after due advertisement had exposed the property to sale a second time ; have we any assurance that the sympathies of the public for the widow would have abated in any degree, or that the resolution of the heirs and creditors would have sufficiently matured to enable them to make the property bring its full value ? In the meantime, we must remember that the property if perishable may have been wasted, or the expense of keeping stock, &c., may have consumed the whole estate.

By a recent statute an executor or administrator may bid in, at any auction sale, real property and take a conveyance to himself as executor or administrator, for the benefit of the estate, when in his opinion this is necessary to prevent a loss to the estate. Acts 1868-'9, ch. 113, sec. 77.

But there is no change in the well established law, in respect to personal property—that an administrator cannot bid at his own sale, and surely he cannot be required to exhaust the estate, by repeated sales merely because the heirs, the creditors, and the public will not bid against the widow.

The defendants rely upon the authority of *Johnston* v. *Eason*, 3 Ired. Eq. 330, in which *Nash, J.*, in delivering the opinion of the Court commences by saying—"it is impossible to read this testimony without being entirely satisfied that a great fraud has been attempted," and he closes with the remark that we "see so much of trick and contrivance, as satisfies us that the whole was a base fraud." In our case, we think that the evidence sustains the report of the clerk, that the administrator was in no default, and that the sale was conducted with perfect fairness. And we may say of him, as is said in *Beale* v. *Darden*, 4 Ired. Eq. 76, an administrator, like other trustees, is not to be held liable as insurers or for anything but *mala fides* or want of reasonable

diligence. It is both plain justice and plain policy to hold them chargeable out of their own estates, only on that principle, in order to get responsible and honest men to undertake burdensome trusts.

Let it be certified that there was error in the ruling of his Honor, sustaining the exception and ordering the report to be reformed.

PER CURIAM.                    Judgment reversed.