JAMES HOWELL and others v. WILLIAM M. TYLER, Executor.

*Construction of Will—Illegitimate Children, right to take under— Executors and Administrators.*

1. A testator, among other things, provides as follows: "What is yet remaining, not above disposed of, shall be held and disposed of for the benefit of M.'s heirs, by my executor, or in such manner as he may think just and proper;" *Held,* that the concluding

HOWELL *v.* TYLER.

words enlarge the discretion of the executor, but the power exercised must be "for the benefit" of the heirs, and not to dispose of the estate so as to divest himself of the attaching trust.

2. Where a bequest is immediate—not dependent upon a preceding limited estate—to the heirs of a living person, and the children of such person are illegitimate; *Held*, they have the right to take, under the act which declares that a limitation to the "heirs" shall be construed to be the "children" of such person, unless a contrary intention appears. THE CODE, §1329. The ruling in *Thompson* v. *McDonald*, 2 Dev. & Bat. Eq., 463, commented on.

3. "I give to the children of my brother William and my sister Martha one-half of all the money on hand at my death," taken in connection with other provisions in the will, authorizes a distribution of the fund in equal parts between the children of his brother and the children of his sister, so as to carry out the intention of the testator. The general rule is that such limitations will be held to be *per capita*, but the rule will yield whenever a different intention is indicated.

4. The sale of the land of the testator by the executor and his purchase of the same through an agent is a nullity.

(*Thompson* v. *McDonald*, 2 Dev. & Bat. Eq., 463; *Kirkpatrick* v. *Rogers*, 6 Ired. Eq., 130; *Waller* v. *Forsythe*, Phil. Eq., 353; *Adams* v. *Adams*, 2 Jones Eq., 215; *Bryant* v. *Scott*, 1 Dev. & Bat., 155, cited and approved.)

SPECIAL PROCEEDING commenced before the clerk for an account and settlement of the estate of William Tyler, deceased, and heard at Fall Term, 1882, of GRANVILLE Superior Court, before *Shipp, J.*

The case involves the construction of a will. The defendant appealed from the ruling and judgment of the court below.

*Mr. T. B. Venable,* for plaintiffs.
*Mr. M. V. Lanier*, for defendant.

SMITH, C. J. In the will of William Tyler, who died soon after making it, in July, 1870, is contained the following clause, numbered 3:

" What is yet remaining, not above disposed of, shall be held and disposed of for the benefit of Martha J. Trevan's heirs, by my executor hereafter to be named, or in such manner as he may think best and proper."

The testator left three children, to-wit, Alfred, whom he appoints his executor, and who is the testator of the defendant William; the defendant William, and Martha, then married, who had no children born in wedlock, but had four illegitimate children, the plaintiffs Elizabeth Howell, Amanda Tyler, Hawkins Tyler and Frances Richardson, the youngest of whom was then twelve years of age.

Alfred Tyler administered upon his father's estate, but died without settling it, in February, 1874, having made a will wherein he appoints his brother William (the defendant) executor, and makes the following dispositions of property:

Item 2. I give to the children of my sister Martha Trevan all that portion of my father's estate given me for her support.

Item 3. I give to the children of my brother William and my sister Martha one-half of all the money on hand at my death.

The proper construction of these several testamentary dispositions and the effect to be given to them, passed upon in the superior court, are brought up for revision by the defendant's appeal.

1. The first inquiry is as to the power and interest vested in the executor Alfred under the concluding clause of the bequest for the benefit of Martha Trevan's heirs, "or in such manner as he may think best and proper." The preceding words are that the fund " shall be held and disposed of for the benefit " of the heirs of his daughter by the executor, and then follows the language recited.

It is manifest, if we regard the entire clause, that the testator never meant to take away from the beneficiaries what

was to be held and managed for them, or leave it in the power of the executor to dispose of the legal estate, so as to divest himself of the attaching trusts and deprive them of any interest in the property itself, and in that for which it may have been exchanged. The purpose was to enlarge the discretion reposed in the executor, to be exercised however for their benefit, when exercised at all. It may have been needless to add these words, since he had been already clothed with the power of disposing of the property, but it would be a perversion of the testator's words, when this power was given and to be used *for the benefit* of the heirs, to attribute to them a meaning which effectually neutralizes the trusts, and gives him the property divested of them. The clause must be so interpreted as to produce harmony in its parts, and this requires the construction suggested.

2. The next inquiry is whether the plaintiffs, illegitimate children of Martha, she having had none others, can take under the terms of the bequest of her heirs.

The bequest is immediate and direct, not dependent upon a preceding limited estate, and unless these natural children are intended, the gift fails for want of a donee or recipient. The word used must be understood as synonymous with the word children for the statute expressly declares that a limitation "to the heirs of a living person shall be construed to be to the children of such person," unless a contrary intention appear in the writing, and none such does appear here. THE CODE, § 1329.

So, inasmuch as, in the absence of children born to the mother in wedlock, those of illegitimate birth can inherit from the mother and thus become her heirs, these plaintiffs are sufficiently designated by the term which describes that relation.

Assuming then that "heirs" means "children," must these latter be legitimate to be embraced in the donation?

Two cases are cited as supporting the proposition that a

bequest to children of a person, without further explanation, is a bequest to children that are legitimate, and fails if there are none such. In *Thompson* v. *McDonald*, 2 Dev. & Bat. Eq., 463, the bequest was to two sisters, naming them, with a limitation that if either should die without a child or children living at her death, "the whole should survive to the surviving sister, her heirs and assigns." One of the sisters died without ever having been married, but leaving a daughter born out of wedlock and before the making of the testator's will. It was decided, GASTON, J., delivering the opinion, that legitimate children were meant, and the surviving sister took the entire estate.

The limitation here was upon a distant and contingent event, and as illegitimate children in the eyes of the law, are not the children of any one, *nullius filius*, they were not comprehended in the term used. It is not necessary to question the correctness of this rigid rule of testamentary interpretation, which seems to ignore to some extent the inquiry as to what the testator intended in using the word, since there was nothing in that case to explain the sense of the testator or to qualify the legal principle that such children have no parent and cannot be designated by a relation they do not sustain.

The opinion is put upon the ground that it is not a present but a *prospective disposition*, and it proceeds thus: "Now, without deciding upon the effect of a bequest explicitly made to the children which a woman may have, whether legitimate or natural, or upon the effect of a limitation in case a woman should not leave living at her death any child, whether legitimate or natural, it is enough to say," &c., evidently conceding that an expressed intention to include a child of either class would entitle the natural *child* to share in the bounty.

The other case, *Kirkpatrick* v. *Rogers*, 6 Ired. Eq., 130, sustains the same proposition, and, as there were children of

each class, confines the bequest to the legitimate in exclusion of the natural children.

But a more general and fundamental rule, underlying all others, is to look at the whole instrument in the light of the surrounding circumstances when it was made, and see, if we can, in what sense the testator used the word, for his intent must prevail over any legal mode of construing it when there is antagonism. The testator knew that his sister had then illegitimate and no legitimate children, and that the former could under such circumstances inherit from their mother, and the bequest operates at once upon persons *in esse* at his death, or not at all. Could he have intended a present benefit to persons who did not then exist and might never come into being? Or did he mean to convey a present benefit to some legatees, and can any others be meant except the natural, who were in fact, however under technical rules of law they were not, *children* of his sister?

We think the testator intended the benefit of this bequest to the plaintiffs, and that by the word "heirs" he meant the children and in this sense employed it, though they were natural, in pointing out the beneficiaries.

3. In the next place—Who take and in what shares under the clause in Alfred's will? "I give to the children of my brother William and my sister Martha, one-half of all the money on hand at my death." This item is susceptible of two interpretations, one as making a division between the children of William and the children of Martha, forming an aggregate body ; the other, as making a division between the children of William and Martha herself.

In *Waller* v. *Forsythe*, Phil. Eq., 353, the limitation was, after the death of the testator's wife and daughter, or inter-marriage, "to be equally divided between the children of the said Nancy Waller and my sons, William and John ; " and it was construed to be a division *per capita*, each of the children of Nancy sharing equally with William and John.

On the other hand in *Adams* v. *Adams*, 2 Jones Eq., 215, where the disposition of the residuary estate was that it be "equally divided between the children of my brother, Jahleel Smith Coila and my sister Nancy Amanda Adams," the words were construed as giving an equal share to the children of both the brother and sister. This construction was put upon the language and its meaning ascertained by looking into the other provisions of the will.

Pursuing the same course, it will be seen that William has all the land except the one-fourth in value upon which Martha may live and have an annuity from him of a sum not above $50 nor less than $30, to cease when the value is exhausted, but if not exhausted at her death, the residue to go to her children.

The testator then gives the defendant one-half of the money on hand at his death, and the other half as in the recited clause under consideration. The defendant has thirteen children, and if each shares with Martha, William and his children will get 27-28ths or nearly the whole of the money, a distribution not at all consonant with the previous dispositions of his estate. Following the ruling in *Adams* v. *Adams*, we are compelled to declare that the testator intended, and such is his expressed purpose in this clause, to distribute the fund in equal parts between the children of William and the children of Martha, as if this had been the form of expression used, prefixing the word "children" to both names.

In a note appended to *Bryant* v. *Scott*, 1 Dev. & Bat. Eq., 155, in the edition issued under the supervision of the late Judge Battle, he lays down the rule, which runs through the many adjudicated cases and distinguishes them, to be generally that such limitations will be held to be *per capita*, but if there be a different intent indicated and that the division must be *per stirpes* or in another way, the general rule will yield to the evidence thus furnished of a different intent. The cases are collected in the note.

4. We concur in the rulings of the court numbered 3, 4 and 5, all of which result from the invalidity of the attempted sale by Alfred of the land of the testator and his own re-purchase through the agency of his son; and this being a nullity, no funds are thence derived to constitute assets in his hands. The only effectual method of sale to convert real estate into funds to be used in a course of administration is by suit against the heirs or devisees in whom the estate is vested; unless the devise or descent was to the personal representative alone, and then as sole owner he could dispose of it by his own act. But even in such case he could not make a sale to himself, and would hold as if none had been attempted.

There are other questions made in the record which do not seem to have been passed on in the court below, and the complaint is that they were not, but as our revising jurisdiction on appeal is restricted to the erroneous rulings made, we do not enter upon a consideration of the others.

The cause must be remanded to be proceeded with according to law as declared in this opinion.

No error. Remanded.