STATE, ex. rel. R. A. TORRENCE et als. v. E. C. DAVIDSON et als,

*Administrator—Diligence.*

1. All that is required of an administrator in the management of his intestate's estate is diligence and fidelity. If coercive measures vigorously pushed against a debtor are likely to result in a loss to the estate, he is not required to adopt them.

2. An administrator is never held responsible because the exercise of a reasonable discretion has turned out unfavorably for the estate.

3. A debtor to an estate being in failing circumstances, the administrator made a further advance of money to him, and took a mortgage to secure the entire amount. It was possible, but not probable, that the debt might have been collected by suit, and the debtor refused to give the mortgage unless the further advance of money was made. The debtor became utterly insolvent and the mortgaged property was insufficient to pay the entire debt; *Held,* that the administrator was not liable to the estate for the loss.

4. The fact that an administrator has a common interest in the estate with the distributees is a circumstance tending to show the exercise of fidelity in the management of the estate.

(*Patterson* v. *Wadsworth*, 89 N. C., 407, cited and approved).

CIVIL ACTION, heard on exceptions to the report of a referee, at August Term, 1884, of MECKLENBURG Superior Court, before *McKoy, Judge.*

His Honor gave judgment for the plaintiff and the defendants appealed.

The facts appear in the opinion.

*Mr. George E. Wilson,* for the plaintiffs.
*Mr. W. P. Bynum,* for the defendants.

SMITH, C. J. J. T. Davidson died intestate in March, 1874, and soon after, letters of administration issued to the defendant E. C. Davidson, who, with the other defendants as sureties, gave the bond on which the present action is brought by some of the distributees to recover their share in the estate.

Among the effects which passed into the possession of the administrator, were four promissory notes executed by R. D. Gra-

ham, respectively in the months of June, August, September and November previous, and which matured twelve months after their several dates. They were unsecured, and the administrator, apprehensive of loss from the large indebtedness of the maker, endeavored to effect a settlement, and after repeated efforts obtained from him the promise of a mortgage on a lot in Charlotte. Afterwards, and at the solicitation of the administrator, on his making an additional loan and extending the time of payment, he procured a mortgage from Graham on said lot and several others, in value deemed amply sufficient to secure the debt. The deed bears date September 25th, 1875, and was registered the next month. It authorized a sale by the mortgagee in case of default after the expiration of the year. The property thereafter declined in value, and in the expectation of improvement, the sale was deferred until September, 1877, when suit was brought for a foreclosure, and under a decree of the court, the lots were sold in March, 1878, for $1,810 to the administrator, he being the highest bidder, the report of which sale was made and confirmed. The administrator offers to surrender the property to the distributees on being exonerated from further liability on account of these notes.

The registration of the mortgage was postponed with the mortgagee's consent, until notified by Graham to have it done, on his promise to let the former know when he was threatened with suits by other creditors, and declaring if the administrator attempted to sue, the other creditors would be notified, and the administrator must look to the mortgaged property alone for his debt. Judgments were recovered by other creditors and docketed on May 11th, 1877, amounting to thirty thousand dollars, and Graham has become wholly insolvent.

The administrator is himself a distributee in the estate of the intestate and as such entitled to share therein.

Upon these findings the court was of opinion that the administrator "did not exercise due diligence in the collection of the notes," and ruled that he was chargeable for their full amount.

From this ruling the defendants appeal, and it is the only matter involved in the account rendered by the referee open to examination.

We do not assent to the conclusion of law deduced from the facts, of such inattention and remissness as subjects the administrator and his sureties to the payment of the entire indebtedness, for reasons which may be thus summarily stated:

1. Some assurance of fidelity to the trust assumed with its obligations, is furnished in the fact of his having a common interest with others in securing the fund for the estate.

2. He acted with a prudent caution in not at once resorting to coercive measures, and precipitating an unfavorable result, under the menace that if he did so other creditors would be notified and allowed to appropriate to their demands the other property of the debtor, for this must be the import of his words, that in such case, the administrator would not be allowed to share with them, but must be content with what he had already secured under the mortgage.

3. He pressed his claims in a less direct manner, suggested by information of the heavy indebtedness overhanging the debtor, and his precarious financial condition, and by means of a further loan and longer indulgence, secured the preferential assignment of property considered ample for the amount of the mortgage debt.

4. The delay in closing the mortgage was prompted by the hope of a recovery from the depreciation which had fallen upon the lots, and as soon as it failed, steps were taken and carried out for the sale.

5. To prevent greater loss, the administrator bid off the lots and now offers to surrender them for the benefit of the estate.

Throughout, the administrator has acted with an earnest desire to save the debt and to protect the trust estate from loss, and even now it is not seen wherein he has been derelict in duty or how he could have better managed the fund. He has exercised vigilance and attention in his efforts to promote the interests commit-

ted to his care, some portion of which was personal. If instead of procuring the mortgage, he had proceeded by action, while perhaps the whole might have been saved, the indications rather are that this indebtedness would have shared the fortune of the large amounts in the docketed judgments, and with more reason in such case would a personal accountability have been incurred, had he declined to take the offered mortgage upon the prescribed terms.

The cases cited in the brief of counsel for the appellee, go no further than to demand diligence and fidelity in the discharge of fiduciary obligations, and prompt action when it does not endanger the safety of the fund. But if coercive measures, vigorously pushed, are likely to result in loss, the fiduciary is not required to adopt them, for a prudent regard to the interests committed to his hands is quite as much a duty, as active conduct under other circumstances. In a case where an executor was sought to be held responsible for retaining certain Mexican bonds until their depreciation caused a loss, Sir C. C. Pepys, Master of the Rolls, used this language: ''I have found no case, and none has been produced, in which an executor has been called upon to bear the loss that has arisen, because in the *bona fide* exercise of a reasonable discretion, the conclusion he came to has turned out unfortunately." *Buxton* v. *Buxton,* 1 Mylne and Craig, 80.

But we have been referred to a recent case, the report of which is not accessible, the facts of which, as found in 10 Jacobs' Fisher's Digest, 15,820, briefly stated, are very similar to the present.

A testator died in possession of certain notes, which coming into the hands of his executor, were presented to the debtor for payment. This the latter was unable to meet unless by selling certain real estate under mortgage, sufficient, as he believed, to discharge both the mortgage debt and that of the executor. The mortgagees made further advances but no payments were made to the executor. Being again pressed, the debtor filed a liquidation petition that he said he would have resorted to in case he had been pressed at an earlier period. It was sought to charge

the executor with the loss of the debt, and it was held that he was not liable, as no such negligence was shown as to put that burden upon him.

The proper measure of fiduciary liability where loss has been sustained, is laid down with many adjudications in its support, in the recent case of *Patterson* v. *Wadsworth*, 89 N. C., 407, in quoted words, as follows, "executors should not be held responsible as insurers. All that a sound public policy requires, is that they shall act *in good faith and with ordinary care.*"

More cannot be reasonably demanded, nor does the law impose a higher obligation at the peril of individual loss.

Tested by this just and salutary rule, we shall find in the conduct of the administrator in the management of these notes, no other than an earnest desire to save of them all that he could, and the use of such means as seem to assure advantage to the estate. He had, at one time, apparently at least, secured the entire debt, and the delay was a condition upon which the mortgage deed was obtained, and the subsequent forbearance of sale was prompted by an unwillingness to sacrifice the property, and in the hope, though it ended in disappointment, that there would be a reaction from the depreciated market value in real estate.

It does not appear what or whose money was used in the loan by which the conveyance was obtained. Nor is it of any moment to inquire, since, without objection, the whole proceeds of sale are applied to the notes in controversy, and thereby no detriment on this account comes to the estate.

The report of the referee exonerates the administrator from this loss, and the plaintiff's exception thereto was sustained by the court. In this ruling there is error, and the defendant's exception to the reformed account, in this feature, must be upheld. There is error in the ruling by which the defendants are charged with the entire debt and with the costs of the suit of foreclosure, and these will be stricken out. To this end it is referred to the clerk, and when the account is corrected, the plaintiffs are entitled to judgment for what may then be found due to them.

Error.　　　　　　　　　　　　　　　　Reversed.