LEANDER TAYLOE v. LANGLEY TAYLOE, Adm'r of W. S. TAYLOE.

*Administration—Purchase by Administrator at his own sale— Negligence.*

1. An administrator cannot purchase property at his own sale, although he pays a fair price and acts in good faith.
2. While an administrator is not an insurer, he will be held to that degree of diligence and care which prudent men under like circumstances would exercise, and the fact that he acted in good faith and with an honest purpose to protect his trust will not excuse him from liability for a failure to use such diligence and care.

CIVIL ACTION, tried before *Whitaker, J.,* upon exceptions to referee's report, at Spring Term, 1890, of HERTFORD Superior Court.

It appears that shortly before the 25th of August, 1877, W. S. Tayloe died intestate in the county of Hertford, and on that day the defendant was appointed and qualified as administrator of his estate. The plaintiff, his brother, and the surviving widow of his intestate, were the distributees of the estate, and this action was begun on the 2d day of April, 1888, to compel an account, settlement and distribution of the estate in the hands of the defendant, as to the plaintiff.

The pleadings raised numerous issues of fact. In the course of the action, it was referred to a referee to take and state an account and make report thereof, &c., all of which was done. To the report the plaintiff filed numerous exceptions, as did also the defendant. These exceptions were disposed of by the Court below, except in two respects. The Court charged the defendant with a rate of interest to which he excepted. This exception was abandoned in this Court. The Court also charged the defendant with $333.33, the plaintiff's share of the face value of a certificate for $1,000 of the stock of the Chowan Female Baptist Institute, and the defendant excepted.

With respect to this exception, the Court finds the following facts:

One share of this stock of the face value of $1,000 went into the hands of defendant as administrator of W. S. Tayloe.

After two years from defendant's qualification as administrator, an order was duly made by the Clerk of Hertford Superior Court, under section 1412 of *The Code,* directing the sale of certain evidences of debt belonging to intestate Tayloe, among which this stock was described. Under said order, the same was offered for sale at public biddings, and the defendant honestly and earnestly tried to induce bidders and secure purchasers, but without success, and it was finally

knocked off to him at $103.    After this, he tried to get other parties to take it at that sum for the benefit, and failed, and finally charged himself with the amount and surrendered the stock to trustees appointed by the Chowan Baptist Association to reorganize and establish the Chowan Female Baptist Institute.    He received no pecuniary benefit from said stock, or benefit of any kind, except that he was allowed to send one indigent young lady to said institution free of charge, whose tuition would have amounted to $62.50.    She was in no way related to him.    The total stock was $10,500. This stock had no pecuniary market value whatever, and the defendant acted in the matter in good faith and, as he believed, for the best interest of the estate.

The stock was at the time believed by the defendant to be insolvent and without pecuniary value.    The property consisted of the college buildings and grounds, constructed and arranged for college purposes, and was purchased and had been used by the Baptist denomination for many years for a female school.    This is located in the village of Murfreesboro, and is worth $20,000 to $25,000, and pays an annual rental of $600, which has to be applied to repairs of said property.

In 1868, the title to said property was held by trustees for the Chowan Baptist Association.    At that time the institution was much involved in debt, and the association directed and authorized said trustees to convey the property to a joint stock company upon the condition that such stock company would pay the outstanding debts of the institution and would reconvey the property to said association upon its repayment of the money expended by such stock company in paying said debts.    The debts amounted to about $10,500, and a joint stock company was accordingly formed with a capital stock of $10,500, and the amount of stock held by each stockholder represented the amount of said debts paid by such stockholder.    The $1,000 of stock owned by W. S. Tayloe, and sold by the defendant administrator February 7th,

1881, was a part of said capital stock. At the time of said sale, the owners of the stock in said company, except two, had voluntarily surrendered their stock to trustees, as heretofore stated, without demanding or receiving repayment of the money expended by them in paying the debts of the institution. Of these two stockholders, one, holding $500 of stock, under an agreement with the trustees, was permitted to consume the whole of his stock in literary tuition for his own children; and the other, holding the same amount, consumed $440 thereof under the same agreement, and then surrendered the balance. When the stock of W. S. Tayloe was sold it was unpaid, and there was no other stock then outstanding.

The facts as above stated during the argument before his Honor were admitted by both the plaintiff and defendant to be true, and the Court so find.

Upon this evidence, the Court held that the stock was solvent, and could, by due diligence, have been collected in full, and charged the defendant with the same, as above.

There was judgment for the plaintiff, and the defendant having excepted, appealed to this Court.

*Mr. B. B. Winborne,* for plaintiff.
*Mr. W. D. Pruden,* for defendant.

MERRIMON, C. J.—after stating the facts: It appears by the record that each of the parties waived his right to trial by a jury. It was thus consented by the parties that the Court might find the facts, and we are not at liberty to review the findings of fact by a tribunal thus selected by the parties. Moreover, it is stated in the case settled on appeal that the facts as stated by the Court, "during the argument before his Honor, were admitted by both the plaintiff and defendant to be true, and the Court so finds." This statement is part of the record, and we must accept and act upon

the record as it comes to us, as duly certified, by transcript. It was therefore wholly unnecessary to send up the whole or any part of the evidence upon which the Court based its findings of fact.

The appellant insists that the Court improperly charged him with the face value of the stock of the Institute mentioned, because, first, he purchased the same at a sale thereof made by him as allowed by law, and accounted for the sum of money bid, and paid for it in good faith, and with the view to benefit the estate of which he was administrator; and, secondly, that the "stock had no pecuniary market value whatever, and the defendant acted in the matter in good faith and, as he believed, for the best interest of the estate."

Very certainly, the appellant had no right to purchase the stock of himself at his own sale, made in pursuance of an order of tbe Clerk of the Superior Court allowing a sale of such stock, as he undertook and purported to do. To say the most for him, such sale was voidable at the will of the next-of-kin (of whom the appellee is one), and interested creditors   An administrator cannot purchase property at his own sale, even in good faith, fairly, and for a fair price; certainly, he cannot in any case, without the sanction or ratification in some sufficient way manifested of those interested. This rule is well settled and founded in reason, justice and sound policy.   For convenience of reference, we here cite several cases more or less in point, and stating the reason and grounds of the rule.   *Ryden* v. *James,* 1 Hawks., 497; *Cannon* v. *Jenkins,* 1 Dev. Eq., 426; *Villines* v. *Norfleet,* 2 Dev. Eq., 167; *Ford* v. *Blount,* 3 Ired., 516; *Tate* v. *Dalton,* 6 Ired. Eq., 562; *Stewart* v. *Rutherford,* 4 Jones, 483; *Robinson* v. *Clark,* 7 Jones, 562; *Roberts* v. *Roberts,* 65 N. C., 27; *Froneberger* v. *Lewis,* 70 N. C., 456; *Froneberger* v. *Lewis,* 79 N. C., 426; *Howell* v. *Tyler,* 91 N. C., 207.

It does not appear that the appellee in any way sanctioned, assented to or ratified the sale in question. He was not bound by it, and he has the right to avoid it. It must be treated as wholly ineffectual for the present purpose.

If the appellant had sold the stock at a fair sale and in good faith, under the order of the Clerk of the Court, to some person who might purchase the same and who bid and paid less than the real value of the property, he would be chargeable only with the sum of money he so received; but he chose not to make an effectual sale, thinking and believing he ought not to allow a great sacrifice of the stock. But this did not justify him in afterwards virtually giving it to the association, as he did do. It was not his. There had been no sale of it, and he was bound, as administrator, not simply to exercise good faith, but as well to observe reasonable care and prudence in the disposition of it. An administrator is not an insurer, but he is required to observe good faith and ordinary care. He must honestly and faithfully intend to care for and promote the just advantage in all respects of the estate for the benefit of those interested in it. But this is not sufficient. He is further bound to exercise reasonable prudence and care. What is such prudence and ordinary care must depend more or less upon the condition and circumstances of the matters and things to be done or disposed of in the course of administering the estate. However honest an administrator may be, and however much he may desire to protect and promote the estate with which he is charged, he is required to use such ordinary diligence, care, foresight and circumspection as an ordinary sensible and prudent man would do, under the like conditions and circumstances, as to his own property and affairs. *Nelson* v. *Hall*, 5 Jones' Eq., 32; *Patterson* v. *Wadsworth*, 89 N. C., 407, and numerous cases there cited; *Torrence* v. *Davidson*, 92 N. C., 437; *Grant* v. *Reese*, 94 N. C., 725; *Green* v. *Rountree*, 88 N. C., 164, and the cases there cited.

In this case the Court finds that the appellant acted "in good faith and, as he believed, for the best interest of the estate"; but it finds further "that the stock was solvent, and could, by due diligence, have been collected in full," and hence it charged him with the face value of the same. It finds that he was honest; that, however, he was not reasonably diligent, prudent and careful; that he disposed of the stock unlawfully and for a sum of money greatly less than its value, to the appellee's injury. And surely the facts as found show that the appellant was chargeable with gross negligence. The property of the Institute was worth from $20,000 to $25,000. It owed debts to the amount of $10,500. Its capital stock was $10,500. The appellant treated $1,000 of the stock in his hands as worth but $103, and accounts for only that sum. He failed to dispose of it as the law directed, as he should have done to relieve himself from liability. The Court finds that it is worth the sum specified in the certificate. Hence, clearly, the appellant was properly charged with that sum.

Judgment affirmed.