H. ·J. MARSHALL, ADMINISTRATOR OF FRANK RYAN, DECEASED, v. E. T. KEMP AND U. S. FIDELITY & GUARANTY COMPANY OF BALTIMORE.

(Filed 18 November, 1925.)

**1.  Executors and Administrators—Trusts—Good Faith—Ordinary Care— Insurer—Officers. ·**

An executor or administrator is not held to be an insurer in executing the trust arising from such position, but only to act in good faith, with due diligence and ordinary care, in accordance with the responsibility of his office.

**2.  Same—Evidence—Directing Verdict—Appeal and Error—New Trials.**

Where an administration of the estate of the decedent is contested upon the ground that invalid letters had been issued to him by the clerk of the Superior Court of the wrong county, and it has been determined against him acting in good faith on appeal to the judge of the Superior Court, and by the Supreme Court on further appeal, an instruction that fixes the liability of the administrator and his bondsmen if this evidence is accepted by the jury, for a deposit he had made in a bank that had since become insolvent, is reversible error, it being for them to determine further as to whether he had acted in good faith and the care required in such instances. ·

STACY, C. J., not sitting.

APPEAL by defendant from *Dunn, J.,* at May Term, 1925, of NEW HANOVER.

Frank Ryan died in Pender County 1 August, 1922. On 14 August, 1922, letters of administration upon his estate were issued by the clerk of the Superior Court of New Hanover to the defendant Kemp, who was a resident of Brunswick County; and afterwards (on 25 September) similar letters were issued to the plaintiff by the clerk of the Superior Court of Pender. Thereafter (29 September), the plaintiff filed a petition before the clerk in New Hanover to recall the letters issued to Kemp and to remove him from the office of administrator on the ground that the deceased at the 'time of his death was domiciled in Pender County. C. S., 1. The petition was allowed and the appointment of Kemp was revoked on 9 October. Upon Kemp's appeal to the Superior Court the clerk's order was affirmed and upon his appeal to the Supreme Court the judgment of the Superior Court was affirmed. *In re Ryan,* 187 N. C., 569. At the time of his death the intestate had on deposit in the Liberty Savings Bank, of Wilmington, the sum of $2,489.30; and after his qualification as administrator the plaintiff drew a check for said amount and the bank refused to make payment for the alleged reasons that it did not recognize the plaintiff as the personal representative of the deceased and that the defendant's attorney objected to the

MARSHALL *v.* KEMP.

payment. The plaintiff alleged that the administration in New Hanover had been procured by an agreement between Thomas E. Cooper and the defendant Kemp for the purpose of keeping the deposit in said bank and preventing its withdrawal therefrom.

The defendant Kemp filed an answer admitting the appointment of the two administrators, denying certain allegations of the complaint, and alleging by way of further defense that he had executed a bond with his codefendant as surety, and that all acts performed by him as administrator had been directed and supervised by the clerk for the purpose of preserving and protecting the estate; and further that his check for the amount of the deposit had been dishonored because the plaintiff had objected to its being paid. The Fidelity and Guaranty Company filed an answer of similar import, setting out the bond it had executed as surety for Kemp. The money remained in the Liberty Savings Bank until the day of its failure. On 2 September, 1924, the plaintiff brought this suit to recover of the defendants the amount of his intestate's deposit namely, $2,489.30. On the trial two issues were submitted to the jury:

1. Did the defendant wrongfully refuse to pay over to the plaintiff as administrator of Frank Ryan, the money on deposit in the Liberty Savings Bank to the credit of said Frank Ryan? Answer: Yes.

2. What damages, if any, has plaintiff sustained on account of said wrongful refusal to pay over said moneys? Answer: $2,489.30, with interest from 25 September, 1922.

The following instruction was given:

"The court being of the opinion, as a matter of law, that the refusal of the defendant to pay over said moneys was wrongful, and that thereafter he held said moneys at his peril, it being admitted that the letters of administration issuing to the said defendant were declared void and canceled by the clerk of this court on 9 October, 1922, the court instructs the jury upon the first issue, if it finds the facts as testified to by all the witnesses, to answer the first issue yes and the second issue $2,489.30, with interest from 25 September, 1922."

Judgment was rendered in favor of the plaintiff and the defendants appealed.

*John D. Bellamy & Sons for plaintiff.*
*Rountree & Carr for defendants.*

ADAMS, J. The clerk of the Superior Court of New Hanover revoked Kemp's letters of administration on 9 October, 1922. The jury were instructed that Kemp thereafter held the money on deposit at his peril and if they found the facts to be as the witnesses had testified, the answer to the first issue should be "Yes," and to the second the full amount of

the plaintiff's claim with interest thereon from 25 September, 1922. The instruction implied either that Kemp's liability was definitely fixed when the letters were recalled or that by virtue of his qualification as administrator he was an insurer of the assets coming into his hands. In our opinion neither of these positions can be maintained.

The liability of a public officer differs from that of a trustee or a bailee. The general rule is that an officer who enters into an obligation to account for money received by virtue of his office insures the safety of all funds received by him in his official capacity,—insures, as *Justice Rodman* said, against loss by any means whatever, including such losses as arise from the act of God or the public enemy. *Comrs. v. Clarke,* 73 N. C., 255. In *Havens v. Lathene,* 75 N. C., 505, *Chief Justice Pearson* expressed the same opinion by saying that such officer is accountable as a debtor who can relieve himself only by payment. His liability is founded on public policy and the evil consequences which would follow from a less rigid rule as well as on the language of his official bond. *Wilmington v. Nutt,* 78 N. C., 177; *Morgan v. Smith,* 95 N. C., 396; *Board of Education v. Bateman,* 102 N. C., 52; *Presson v. Boone,* 108 N. C., 78; *Smith v. Patton,* 131 N. C., 396. See, also, *U. S. v. Prescott,* 3 How., 578, 11 Law Ed., 734; *U. S. v. Morgan,* 11 How., 154, 13 Law Ed., 643; *U. S. v. Dashiell,* 4 Wall., 182, 18 Law Ed., 319; *Smythe v. U. S.,* 188 U. S., 156, 47 Law Ed., 425.

The rule laid down for the administration of estates is not so exacting. An executor or administrator is held to the liability of other trustees; he is therefore not an insurer. He must faithfully execute his trust and act in relation to it with due diligence. For negligence or a want of ordinary care which evidences bad faith of course he is answerable. "Administrators, like other trustees," said the Court in *Woody v. Smith,* 65 N. C., 116, "are not to be held liable as insurers or for anything but *mala fides* or want of reasonable diligence." All that sound public policy requires is good faith and ordinary care (*Nelson v. Hall,* 58 N. C., 32); for, as suggested by *Chief Justice Nash* (*Deberry v. Ivey,* 55 N. C., 370), if they cannot be protected by an honest endeavor to perform their duties responsible men will rarely incur the hazard of an administration on a decedent's estate. *Beall v. Darden,* 39 N. C., 76; *Williamson v. Williams,* 59 N. C., 62, 66; *Atkinson v. Whitehead,* 66 N. C., 296; *Dortch v. Dortch,* 71 N. C., 224; *Mendenhall v. Benbow,* 84 N. C., 646, 648; *Torrence v. Davidson,* 92 N. C., 437; *Syme v. Badger,* 92 N. C., 706, 715; *Halliburton v. Carson,* 100 N. C., 99, 108; *Moore v. Eure,* 101 N. C., 11, 16; *Tayloe v. Tayloe,* 108 N. C., 70; *Smith v. Patton, supra; Twiddy v. Mullen,* 176 N. C., 16; *Cobb v. Fountain,* 187 N. C., 335.

The duty of an administrator in dealing with assets in his possession is to be measured by the standard set up in these cases. Kemp's liability,

therefore, is not to be determined as a matter of law solely by the clerk's order setting aside the letters that had been issued to him in New Hanover County. The plaintiff contends that these letters were void because the clerk in New Hanover was without jurisdiction; but this was the question that Kemp undertook to contest. It is true, he admitted that Ryan at the time of his death was a resident of Pender; but in doing so he did not necessarily admit that Ryan had his domicile there. C. S., 1; *Roanoke Rapids v. Patterson,* 184 N. C., 135; *In re Martin,* 185 N. C., 473; *Thayer v. Thayer,* 187 N. C., 573; *Tyer v. Lumber Co.,* 188 N. C., 268. And while he was not required in law to appeal from the clerk's order (*Pate v. Oliver,* 104 N. C., 458), he had the legal right to appeal therefrom to the Superior Court and from an adverse ruling thence to the Supreme Court. Constitution, Art. IV, secs. 12, 22; C. S., 633, 637, 638; *Rush v. Steamboat Co.,* 67 N. C., 47; *Rhyne v. Lipscomb,* 122 N. C., 650.

Findings of fact are essentially involved in the question whether in contesting the right to administration and the plaintiff's claim to the deposit Kemp was moved only by an honest purpose to protect the assets in his hands and to discharge the duties imposed upon him by the law, or whether he was in collusion with Cooper or was impelled by an evil motive or acted in bad faith or by perversely contending with the plaintiff caused the loss of the money, having reasonable cause to believe that he was not entitled to the letters of administration. Any competent evidence relating to these contentions should have been submitted to the jury either under the first issue in the record or under the issue tendered by the defendant; and for error in the instruction given the defendants are entitled to a new trial.

New trial.

STACY, C. J., not sitting.